UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*20-11461*  Original  52

DAVID HENRY JOHNSON
      Petitioner,

                            Case No. 1:16-cv-1471

vs

S.L. BURT
        Respondent. /

Case NO
20-11461

MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254

By:   DAVID HENRY JOHNSON
       PRO SE LITIGANT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................  i

STATEMENT OF QUESTIONS PRESENTED........................... ii

STATEMENT OF FACTS....................................... 1H-IV

ARGUMENT..............................................1-45

CONCLUSION.............................................. 45

APPENDIX A.............(MICHIGAN COURT OF APPEAL OPPINION)

APPENDIX B............(MICHIGAN SUPREME COURT ORDER)

AFTER REMAND

APPENDIX C.............(MICHIGAN COURT OF APPEAL OPPINION)

APPENDIX D.............(MICHIGAN SUPREME COURT ORDER TO HOLD)

APPENDIX E.............(MICHIGAN SUPREME COURT'S FINNAL ORDER)

TABLE OF AUTHORITIES

CASES

Benoit V. Bock, 237 F.Supp. 2d 804 (E.D. Mich 2003) ........ 9

Brady V. Maryland 373 U.S. 83 ...........................46,47

Bruton V. United States, 391 U.S. 123 (1968)................ 3

Crawford V. Washington, 541 U.S. 36 (2004)................. 28

Daubert V. Marrell Dow Pharmesudicals 509 U.S. 597 ........ 21

Decker V. Missouri 544 U.S. 622 (2005) .................... 30

Doan V. Brigano, 237 F3d 722 (6th Cir 2001)............... 4

Frazier V. United States, 355 U.S. 497, 511 (1948) ........ 6

Hannon V. Masher, 981 F2d 1142 (10th cir 1992)............. 23

Herbert V. Louisiana 272 U.S. 312 (1926).................. 25

Hodgson V. Warren 622 F3d 591 (6th)....................... 3,4,5

Hugh V. United States 258 F3d 453 (6thCir)................ 20

Illinois V. Allen 397 U.S. 337 (1970)..................... 5,32

Johnson V. Armontrout, 961 F2d 748,754; (8th Cir1992)...... 28

Mason V. Arizona, 504 F2d 1345 (9th 1974)................. 4,32

Miller V. Webb 385 F3d 666 (2004 6th Cir 2004)............ 13,14

Miranda V. Arizona, 384 U.S. 436(1966).................... 41

Northrup V. Trippett 265 F3d 372 (CA 6 2001).............. 21

Ruimveld V. Birkett, 404 F3d1006 (CA 6 2005).............. 4,5,40

Strickland V. Washington, 466 U.S. 668 (1984)............. 26

Taylor V. Illinois, 484 U.S. 400 (1988).................. 30

Turner V. louisiana, 379 U.S. 466,472-473; (1965).......... 26

United States V. Barke 553Fd lexis 2449 .................. 28

United States V.Brika, 416 F3d 514 (CA 6 2005)............ 19

United States V. Durham 287 F3d 1297 (CA 11 2001)......... 29

United States V. Fessel, 53F2d 1275...................... 30

United States V. Gaudin, 515 U.S. 506 (1995).............. 14

United States V. Lewis and Chambers 355 FSupp2d........... 5

United States V. Martinez-Salazor, 528 U.S. 304, 316;...... 6

Ward V. Wolfenbarger, 340 FSupp2d 773(E.D. 2004).......... 39

Webb V. Texas, 409 U.S. 55 (1972)........................ 30

Wolfe V. Bringano, 232 F3d 499 (6thCir 2000).............. 30

Woodwards V. Caldwell, 430 F2d 978,982; (CA 61970)1........ 20

Wigins V. Smith, 539 U.S. 510 (2003)..................... 30

i

STATEMENT OF QUESTIONS PRESENTED


II.   WAS PETITIONER DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY
TRIAL AND THE RIGHT TO BE TRIED WITHIN 180 DAYS WHEN, THROUGH
NO FAELT OF PETITIONER, TRIAL DID NOT COMENCE,

III.   WAS PETITIONER DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL'S CUMULATIVE ERRORS
DENIED PETITIONER A FAIR TRIAL.

III.   WAS PETITIONER DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT
HIS ACCUSERS WHEN PETITIONER'S CONFICTION WAS BASED ON THE
HEARSAY STATEMENTS OF UNAVAELABLE DECLARANTS AND SINCE THERE
WAS NO OPPORTUNITY TO CROSS EXAMINE ACCUSERS WAS PETITIONER
DENIED HIS SIXTH AMENBMENT RIGHT WITNESSES AGAINST HIM.

IV.   WAS PETITIONER DENIED THE FUNDAMENTAL RIGHT TO DUE PROCESS
TO PRESENT A DEFENSE WHEN POLICE DISTRIOYED THE EVIDENCE AGAINST
HIM?

V.   WAS PETITIONER ENTITLED TO RESENTECING BECAUSE THE STATUTORY
SENTENCING GUIGELINS WERE MISSCORED AS TO THE OFFENSE VARIABLES
WHICH EFFECTED THE STATUTORY SENTENCING GUIDLINE RANGE?

AFTER REMAND

VI.   DID THE TRIAL COURT IMPOSE AN UNREASONABEE SENTENCE OF 120
TO 240 MONTHS IMPRISONMENT FOR THE OPPERATING/MAITAINING A
METH LABORATORY INVOLVING METHAMPHETAMINE AND DELIVERY/MANUFACTURE
OF METHAMPHETAMINE?

VII.   IS PETITIONER ENTITLED TO BE RE SENTENCED BEFORE A DIFFERENT
JUDGE WHERE THE TRIAL COURT AGAIN SCORED OFFENSE VARIABLE
14 and again PLACED HIM IN AN INACURATELY HIHG RANGE FOR THE
MINIMUM SENTENCE NOTWITHSTANDING A PRIOR RULING OF THE
MICHIGAN SUPREME COURT IN THIS CASE AND ESTABLISED LAW BY
UNCONSTITUTIONALLY USING JUDICIAL FACT-FINDING TO SCORE THE
VARIABLE AND THEREBY INCREASE THE GUIDLINE RANGE?

## STATEMENT OF FACTS

In reviewing the Michigan Court Of Appeals opinion in this case it is obvious they have the facts in the case twisted. The courts seem to of relied on and based their opinion on the sole mischaracterization of evidence presented in the state's brief.

1. The state offered no tangible lab results as proof they found any methamphetamine . In fact the lab results they attempted to use as their proof were debunked at trial causing the state to switch up their theory in mid trial from cooking the meth to now attempting to cook meth.

2. The state's new theory of attempting to cook meth did not meet the elements nor support the charges petitioner was subsequently convicted of. hence operating and maintaining a meth lab. and possession of methamphatmine.

3. The so called crime scene photos were staged . The police were forced to admit at trial that the items depicted in their photos had first been gathered from many different locations throughout the home, vehicles, and property before then being staged together for the purpose of taking photos. This can only be construed as an attempt to mislead the jury into believing Petitioner has assembled these items himself in order to make meth.

4. No proof of any confession . Contrary to the state law there was no recording of Petitioner's alleged confession the Mich. C.O.A. found so damaging (making it un-admissible by law state law). Nor was there any signed confession the police claimed Petitioner made so willingly. Only the word of biased police officers serving their own interest was offered as proof Petitioner confessed.

5. The police claim Petitioner led them to a box of un-opened sudophederine pills that he himself purchased in order to make meth. Yet when asked to

produce these alleged pills the state claims to have destroyed them without first even taking a picture of this crucial evidence They had time to stage other photos yet claim to of had no time to take a single picture of the main ingredient needed to produce meth by their own theory. Nor did the state produce a signed time stamp from the national registry proving who where and when any sudo pills have been purchased as is required by law. Note: they provided this time stamp on the other defendants proving their purchase.

6. Against the 6th amendment right to present a defense the jury was shown only one side of the story, the state's. After pushing back the trial another 2 weeks defense counsel forgot to update the subpoenas requiring the presence of Petitioner's witnesses Instead of asking the court for a continuance to secure the rebuttal witnesses. Defense counsel simply rested without presenting any of the witnesses he had promised the jury. He claimed he didn't need them because the state failed to make their case.

7 The state produced no witnesses at trial instead they were allowed to base their entire case on hearsay statements allegedly made by the non-testifying co-defendants. Against Petitioner's right to confront his accusers.


No DRUGS, NO CONFESSION, NO WITNESSES

NO CASE

The standard for review for Habeas Petition is set forth in 28 U.S.C. §2254 (d). That section provides that the writ may be granted if the state appeal:

(1) resulted in a decision that was contrary to , or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

(2) resulted in a decision that was based on an unreasonable determination in light of the evidence presented in the state court proceeding.

In the Michigan court of appeals decision, they ruled the prosecutor only used the co-defendant's testimonial out-of court statements against Petitioner to show why the police were called to /dispatched to his home Clearly this is contrary to the United States Supreme Courts ruling in **Crawford V. Washington, 541 U.S. 36 (2004)** where the Supreme Court announced a new standard with regards to the sixth amendment guarantee that a defendant has a right to confront adverse witnesses. The Prosecutor used statements allegedly made by the confidential informant 3 days after Petitioner was already in jail telling how Petitioner supposedly helped him cook the meth, going on in detail how Petitioner shook the bottle, and how Petitioner suplyed some of the materials. Since 1965 the United States Supreme Court has over and over again ruled that the Sixth Amend. Confrontation Clause entitles a defendant to the exclusion of non-testifying co-defendant's police statements that implicate the Defendant. Bruton V. United States 391 U.S. 123 (1968).Furthermore statements made by an informant are testimonial and can not be used against the accused unless the accused has the oppertunity to cross-examine the informant.US V. Cromer 389 F3d 662,670-671(CA6.2004). See trial

-1-

transcripts vol II pg 53-54 diplicting statements made 3 days after Petitioner had been arrested and in jail. How can the Michigan C..O.A. claim these statements offered by the prosecution was only made to show why police were dispatched to Petitioners home:

Q:AlRight, so you spoke to Keven Parsons again on the date of Jan. 11th correct?

A: Correct

Q: Alright, and didn't he again indicate Mr. Johnson and he were cooking meth?

A: Correct

Although the C.O.A. refers to this evidence in their oppinion(clearly indicating they were well awhere of it.) They point out that in his brief Petitioner failed to list these pages in his arguement therefore it is not their job to search through the transcripts to find the evidence.. Petitioner contends that it is vise versa and it's not their job to turn a blind eye to the obvious evidence starring them right in the face.

Betitioer pointed out the prosecution's closing arguements to the Michigan court of appeals in his appeals brief See (tt vol IV pg29)

Prosecutor's closing arguments
"You've heard statements made by Mr. Parson's and it's clear Mr. Parson's made a couple different statements. It's clear Mr. Parson's made a couple of different stories. He told some people that he set up Mr. Johnson. He told some people that they were both involved and this was kind of a group effort."

This statement as well as others interduced by the prosecutor in her closing arguements supposedly made by co-defendant's against Petitioner can only be construed in one way and that was to implicate Petitioner and certainly dictated the out-come of his trial of guilty. The sixth amend seeks fairness indeed-but seeks it through very specific means (one of which is confrontation) that were the

(foot note see trial transcript vol IV pg 63)

-2-

trail rights of englishmen. It "dose not suggest any open-ended

exceptions from the confrontation requirement to be developed by

the courts Crawford, supra at 54, 124 SCt 1354:



### Ineffective ASSISTANCE OF COUNSEL FOR FAILURE TO PROTECT DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHT TO AN IMPARTIAL AND UN-BIASED JURY

Trial counsel (MR Thomas) was ineffective whereas he failed

to protect Defendant's 6th and 14th Amendment rights to a fair

and impartial jury. Counsel neglected to act with customary

skill and diligence of a resonable competent attorney in that

ha failed to comfirm or respond to a venire person's expressed

admission of biased see Hughes v US 258 F3d 453 (cir 6th). There

is no basis to conclude that the juror was able to cast aside

her oppinion and render a verdict based on the evidence as

niether counsel nor the trial court made any futher inquiry into

the juror's statements. Counsel's dicision to seat a biased

juror denied Defendant his consitutional right to an impartial

jury. After juror Schook revealed that three of her imeadiate

family members had struggled with a prolonged drug addiction

that lead to her Maturnal father and stepfather's subsequent death

and her brother ending up in jail for drugs. Juror Schook expressed

her obvious dislike for anything to do with drugs. She also

addmitted that she had personally been a victum of something

related to drugs that she refusesd to reveal. Ms Schook basically

blames drugs for taking everyone away from her which placed

her in foster care at the age of 12. To futher confirm her inability

to be impartial during the trial courts voir dire questions to the

-3-

entire vinire panel. Juror Schook again raised her hand in response
to the trail judges dirract question concerning the posibility
of a biased juror.

Trial court: Q: Ladies and Gentilmen that are in the jury
box right now. You don't have to tell me why but I just want to
make sure that you feel as though you'd be able to sit as a fair
and impartial juror for any reason any of these questions, anything
that comes to mind, is there anybody that doesn't feel that
you could sit on this particular jury as fair and impartial
juror?

A: Juror Schook raises her hand.

Q:Okay Miss Schook, your life experiences?

A: Exactly.

The court: Ok thank you.

There was no futher colloquy with juror Schook by either the
court or Defense counsel. Defendant contends the facts within
Defendan't case mirrors that of the deciding facts of the (6thcir)
decissions within both Miller V Webb 385 F3d 666 (2004) (6thcir)
and Hughes v US 258 F3d 453; citing Hughes.

"When a trail court is confronted with a biased juror, as
in this case the judge must either Sua Sponte or upon a motion,
dismiss the prospective juror for cause. Frazier v United States
355 U.S. 497,511; 93 LEd. 187; 69 SCt 201 (1948). Because the trail
court failed to respond to juror Bell's statement of bias on [**25]
voir dire, we find that, as in Hughes,counsel's failure to respond
inturn was objectively unreasonable pursuant to Strickland. When
avenireperson expressly admits bias on voir dire,

without a court response or a follow-up, for counsel not to respond [to the satement of pertiality] in turn is simply a failure to exercise the custumary skill and diligence that a reasonably comp etent attorney would provide" Hughes 258 F3d at 462 (quoting Johnson v Armontrout 961 F2d 748,754; (8thcir1992).

The decision to seat a biased juror cannot be a discretionary or strategic decision Id. at 463 (citing United States v Martinez-Salazor 528 US 304, 316; 145L.E.d. 2d 792; 120 SCt. 774(2000) holding that the seating of a biased juror who should have been dismissed for cause requires reversal of the conviction.

### FACTS WITHIN THE RECORD WILL SHOW:

Although Petitioner raised the issue of in-effective assistance of appellate counsel in his standard 4 brief which was submitted to the state courts. Petitioners standard 4 was denied . The state courts ruled that any issues raised on the remand were to be limitted to only sentencing issues. Therefore Petitioner only presents this violation of his constitutional right to be provided with effective assistance of appellate counsel to futher show this court the travisty of injustice that was perpitrated against him.

Where appellate counsel seeks to raise in the trial court issues and files a untimely motion to remand in the Court Of Appeals, or fails to include an offer of proof or affidavit in support of the motion's factual basis, the motion will be denied and the issues are not praserved for review. People v Pawelczak, 125 Mich App. 231(1983); People v Duranseau, 221 Mich App. 204 (1997).

In the Michigan Court Of Appeals dicision. It states that:

Defendant argues that he was denied the effective assistance of counsel as a result of the cumulative effect of several alleged errors on the part of defense counsel. To preserve a claim of ineffective assistance of counsel, a defendant should move for a new trial or a Ginther Hearing. People v Sabin (on second - remand), 242 Mich App 656, 658; 620 NW2d 19 (2000).Defendant's motion in the trial court was dismissed as untimely. Because defendant's claim of ineffective assistance of counsel is unpreserved, our review is limited to errors apparent on the record. People v Matuszak, 263 Mich App 42,48; 687 NW2d 234(2004).

Defendant contends that not only did he submitt an affidavit to his appellate counsel he further inssised that appellate counsel pay strick attention to the time limmits on filing his motion to remand. Appellant counsel assured Defendant that he had done this several times and he wasn't about to forgat. This is exactly what happened Appellate Counsel simply forgot to file Defendant's request for a remand within the time allotted by MCR 7.204(A)(2).and was consequantly denied his remand, substancially effecting his first appeal of right.

The remedy for a violation of the right to effective assistance of counsel on appeal is to reinstate the appeal of right. Benoit v bock,237 F. Supp.2d. 804(ED Mich 2003).However, Habeas relief can be unconditionally granted where affording a new appeal "would not vitiate the prejudice to the petitioner from denial of direct appellate review". Ward V Wolfenbarger,340 F.Supp.2d.773 (E.D.Mich.2004) (Quoting Hannon v Maschar, 981 F2d. 1142(10cir1992).

The following arguments are only being offered in rebuttal to the Michigan Court of Appeals claim there was over-welming evidence of Petitioners guilt. The simple truth is, there was no evidence and the case was based on a total mis-representation of the true facts. It's like the Michigan C.O.A. didn't bther to reed Petitioners brief if they had they surely would have seen. There was no confession, there was no meth found, the box of meth componates they found so damming in their oppinion was admittedly staged by the police. It's as if the court refusses to see whats stairing them in the face. It's as if the appellate courts are simply an extention of the prosecutors office, even with that being said one would think that when the violations are so obvious even the most biased judges would have a hard time turning a blind eye.

Defense Counsel was ineffective when he failed to object to the prosecutors blatant misrepresentation of the facts in the case as she misled the jury in her closing arguments into believing that there was rock salt, table salt, and Drano found in the defendant's bedroom on his dresser next to his bed. (Mischaracterization of evidence People v. Coy, 243 Mich. App. 283 (2000)) This assertion was completely unfounded and untrue and highly prejudicial against the defendants presumed innocence. As there is no testimony ever so remotely suggesting that anything of the sort that could or may have been used in the manufacture of meth was found in the defendants bedroom next to his bed where he slept.

To further exasperate her false analogy of the facts she goes on to imply if not for the use of making meth then how odd is it that someone would keep those items on a dresser next to their bed.

(Prosecutor / Ms. Coaster:)

"There is also argument about rock salt being tossed out on the side walk. Again the point becomes who keeps that on their bedroom dresser next to their table salt that they're gonna eat with next to their Drano opener? Funny all of these items are together and they can all make meth but they're on a bedroom dresser. It is reasonable to believe that someone would keep that on their dresser so that they could just throw the salt out in the morning when the sidewalk's slippery, carry it from their bed with them, go outside and throw it on their

sidewalk and keep their table
salt in their bedroom just in
case they were eating in the bed
and wanted to salt something and,
just in case maybe they thought their
toilet was clogged, it's right at hand
so that next time they go to the toilet
they can use the Drano opener too?
No it makes more sense, it's
reasonable to believe that those items
are kept on the dresser that is next
to the bag on the wall that contains
meth.

Defendant contends that these alleged items were said to
have been found in a 8' (foot) utility room located off the
southwest corner of the residence that the prosecutors office
is referring to as a bedroom. As the evidence further shows,
supported by the states own picture evidence. There was no
bed of any sort found in this room nor were there any clothing
or such items that could be directly related to the defendant.
The pictures clearly depict tools and other objects on and
hanging out of the half open dresser drawer, being used as a
tool cabinet.

Furthermore the room as the pictures show is filled from
the floor to ceiling with window screens, paint cans, camping

gear, vacuum cleaners, fans, and other things one might store in a spare room of its size.   But there is no bed or any hint of one sleeping in this room.   There is further testimony to confirm that defendants 26ft x 16ft bedroom was in fact on the North end of the home where there was also a King sized electric bed fully made, three dressers, two night stands, a Hot Tub and two large closest's full of defendants clothes and a computer desk.   Nothing was claimed to have been found in the defendants bedroom where he frequents and ultimately sleeps.

The prosecutor stated, "Wouldn't you know if your buddy left some dope taped to your bedroom wall?   Id. at Pg. 65 Defense argument should have been, No not if you don't use this room, it's only use is as a storage room where guest put there things when staying over night.

The prosecutors closing arguments are a complete misrepresentation of the facts as were entered into evidence and blatant violation of the defendants 6th Amendment Rights to a Fair Trial by her submission of false evidence to the jury and a violation of defendants 4th Amendments Rights of Due Process where as the prosecution is limited to presenting the facts elicited at trial in her closing arguments, additionally although the prosecution showed pictures of items they claim to of come from the defendants home. No rock salt, table salt or Drano had ever been properly substantiated,

entered into evidence under MRE 702 against defendant at trial.

The prosecutor must confine his or her comments to the facts in evidence, inferences arising from those facts and matters of common knowledge, People v. Hoshowski, 108 Mich. App. 321 (1981), People v. Carey, 110 Mich. App. 187 (1981).

In the spare room where the rock salt, draino, and alleged drugs such as Co-Defendant Tammy Harbins purse with the marijuana were said to be found had no bed, no night stand and was filled from ceiling to floor with storm windows, screens, paint cans, rakes, shovels, and other tools that would be expected to find in a utility room

Additionally there was an older dresser that had obviously been converted into a makeshift tool cabnit (full of cleaning supplies and tools which were all over the dresser and filled the drawers. No clothing was found in this so-called dresser. Only household cleaning supplies including rock salt for the surrounding sidewalk.

police testified that items found all throughout the house, garage and work truck were brought into the utilityroom/spare-bed-room placed into a box on top of the makeshift toolbox and then pictures were taken of the now emballished crime seen and then shown to an un-witting jury as evidence. of a meth Lab



NOTHING FOUND IN MASTER BEDROOM WHERE DEFENDANT SLEPT AND CLOSES WERE STORED

DESK
KING SIZED BED
DRESSERS
Jacuzzi

SHOWER
SINK → 10' sliding door
CLOSET DRESSERS

TOILET   BATHROOM
WASHROOM
HALLWAY

UTILITYROOM WARE COMPOBATES FOUND also CO DEFENDANT'S PURSE NO cloths dreser
make shift Tool box

SINK
KITCHEN

LIVINGROOM

TABLE

FIRE PLACE
COATRACK WARE BATTERIES FOUND
FAMILY ROOM

COUCH WARE BATTERIES WERE PLACED FOR PICTURES

DOOR POLICE ENTERED

black red green

DOOR POLICE ENTERED

-12-

, As further evidence to refute the Michigan C.O.A. claims that Petitioner must be guilty after all he confessed.

APPELLANT WAS DENIED DUE PROCESS PROTECTIONS
WHERE TRIAL COUNSEL FAILED TO REQUEST
A MIRANDA HEARING WHERE APPELLANT ASSERTED
THAT RIGHT DURING LAW ENFORCEMENT INTERROGATIONS
AND APPELLANT ADAMANTLY DENIED MAKING ANY
VOLUNTARY STATEMENTS AND OR CONFESSION.

STANDARD OF REVIEW

Where a defendant's Due Process Rights were violated presents a question of Constitutional Law that is reviewed De Novo.

A defendant who asserts his Miranda Rights may not be further interrogated until counsel is made available to him or her, unless the defendant initiates further communication with the police.   People v. Paintman, 92 Mich. App. 412 (1979), rev'd on other grds 412 Mich. 518 (1982).

A heavy burden rests on the prosecution to demonstrate that defendants knowingly and intelligently waived the privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436 (1966).

An   accused  person  who  is  in  custody  must,  before  any
questioning  by  police,  be  warned  that  he  has  the  right  to
remain  silent,  that  any  statement  he  does  make  may  be  used  as
evidence  against   him,   and   that  he  has  the  right  to  the
presence  of  an  attorney,  retained  or  appointed.    "Custodial
Interrogation"  means  questioning  initiated  by  law  enforcement
officers  after  a  person  has  been  taken  into  custody  or
otherwise  deprived  of  his  freedom  of  action  in  any  significant
way.  Miranda v. Arizona, 384 U.S. 436 (1966).

The  burden  is  on  the  prosecution,  by  a  preponderance,  to
demonstrate  the  challenged  confession  was  voluntarily  made,
that  rights  were  given  before  a  custodial  interrogation,  and
that  the  rights  were  properly  waived.   Miranda, supra, 384
U.S.  at  475  ("a  heavy  burden  rests  upon  the  government  to
demonstrate   that  the  defendant  knowingly  and  intelligently
waived  his  (rights)."

The  prosecutor  failed  to  establish  that  it  was  more  likely
than  not  that  the  defendants  were  read  their  Miranda  rights  or
acknowledged  that  they  had  a  right  to  remain  silent.    The
defendants  testified  that  they  were  not  read  their  rights,  the
Miranda  advisement  form  was  not  singed  by  the  defendants  or
any   police  officer,  no  officer  took  notes  at  the
interrogation,  and  the  interviews  were  not  recorded  in  any
way.   U.S. v. Lewis and Chambers, 355 F. Supp. 2d. 870 (E.D.
Mich. 2005).

After storming Appellants' home unbeknownst and uninviting from both entry doors then extracting defendant out of his bathroom in the midst of taking a shower, police claim defendant was lethargic and unresponsive.   This analogy correspond's with the fact that the defendant was under the care of Doctor Esidine of  the Saginaw Drug Rehabilitative Clinic and that Defendant had just minutes before the police's illegal entry into his home taken four (4) Suboxins Strips as prescribed, Suboxin is a strong sedative which can render its patients incoherent for hours at a time.

Furthermore Defendant was for all points and purposes in police custody, Defendant could not leave as he wished nor would his captors allow him to even smoke a cigarette in his own home.

Additionally, police claimed that they asked defendant if he had any meth  making products.   They make no claim to advising defendant of his custodial right to Miranda, they further go on to state that defendant miraculously recovers from his drug induced stupor and voluntarily takes police to a box on the floor of his utility  room  (they conveniently labeled as a bedroom) and say the meth is in there.

Lets be clear the officers testimony claims they found nothing but a box of Sudiphedrine pills in a camping tout the defendant allegedly led police too.

-15-

Defendant admittedly denies leading the police to anything and if they did find a un-opened box of Sudiphedrine why was it not produced at trial as evidence?  Where is the time receipt that all purchases of Sudiphedrine must give identification for at the time of purchase?

How  about a picture of the alleged Sudiphedrine, they took pictures of everything else (probative evidence or not) in the home, but not as much as a receipt or even a picture of the essential main ingredient. They claim they had found. They allegedly found the perverbial smoking gun. But didn't even take apicture?

Defendant further contends that the police eventually took him outside his residence in hand-cuffs and placed him in the back-seat of officer Mays patrol car at which time trooper Laddy the primary officer sitting on the passenger side of the front seat made a statement to Defendant "I'm not going to bother to read you your Miranda rights because you probably have them memorized by now." Patrolman Laddy going on to say your facing 20 years minimum for a meth lab, say good bye to your home, vehicles, tools and everything else you may have it's all gone now.  One of you are going to jail tonight you or your girlfriend.  Which one is up to you - I suggest you start talking "if you ever want to see daylight again."

Defendant's response was, "I'll talk to my attorney, I ain't got nothing to say take me to jail."  At the same time

an officer walked up to the passenger side door holding a Lipton Ice Tea bottle full of a brown slug.   Officer Loddy then said to the defendant.

"I understand that you made it clear that you don't have anything to say. but I am going to tell you that if my officers get themself hurt in anyway handing that bottle. " I'll have your ass." So you want to tell me whats in the bottle. Will it explode, is it toxic, what is it?

At that point the defendants cell phone rang and officer Mays sitting behind the drivers seat stated, "look, it's Kevin Parsons." ( this is one of defendants co-defendants.) Should we answer it. Defendant spoke up and stated, "Yes answer it and while your at it ask that little - slime - ball what the hell is in the bottle.

Instead the officers decided to go back to Parsons residence to arrest him as an accomplice. At no such time did defendant ever make any inculpatory statements.  That was the end of his communication with the officers.

In order to aleaviate the ongoing problem of false confessions the law states all felony confession must be recorded.  See generally MCL 763.7 - MCL 763.8 - MCL 763.9.

Defendant and Tammy Harbin was thereafter taken to the state Police Post where they sat unattended for around 20 minutes until it was decided that defendant's should be taken to the Caro Hospital for observation which this was carried out by a --

different trooper. The defendants' were examined with no diagnostic reports of any burns or anything and released back into the custody of the police where the trooper then took Johnson and Harbin to the County Jail where Harbin was released and Johnson was booked on charges of a meth lab, while in the County Jail Defendant Johnson had no further contact with law enforcement. Or the Michigan Department Of Corrections for over one week at which time he spoke with his Parole Agent Mr. Jim Wanless. The conversation was limited to Wanless describing Johnson's parole violations and without any admission Johnson conceded to serve a 90 day parole violation at T.R.V. Technical Rule Violation.

The Michigan Department of Corrections came to pick Johnson up to serve his incarceration at TRV, but this attempt was interrupted by the prosecution serving Johnson with a warrant for the above charges at the time Johnson was being prepared to leave with the Michigan Department of Corrections Transportation officials.

Defendant Johnson's trial counsel blantantly ignored numerous requests by defendant for a evidentiary hearing and Miranda hearing. The arresting officers own sworn testimony that defendant was taken into custody at the time they first discovered him in the bathroom shower along with his own assertion that he then ask defendant inculpatating questions such as where is the meth and who was responsible for it,

before any mention of miranda rights does validate the need for a Miranda-hearing. If the defendant allegedly gave any intelligent, Knowing waiver of his Miranda rights after allegedly being interviewed at two separate police stations both equipped with DVD's and video why would the police neglect to record this as is prescribed by law?

Or in the very least requested a signed waiver or statement from the accused.


The jury in defendant's case was not given instruction that they were to consider the absence of a recording device as is required by law MCL 763.9 (3) of any alleged confession. this law was enacted in order to abolish all of these so called confessions the police too often claim to obtained with full cooperation only to later be completely refuted by un-supporting defendants.


As petitioner stated above although this issue was not rightfully raised by neither trial counsel nor appellate counsel it is nevertheless part of the factual record and refutes the Michigan court of appeals misconception that Petitioner gave any confession let alone was read his miranda as was required by law. Had Petitioners constitutional rights been considered at the time at the very least the alleged confession would have been thrown out on grounds it was not only un-lawful but it was not recorded as required by law . Under the United states Constitution 14th Amend. all citizens of a state shall be protected under that states laws. Clearly Petitioner wasn't afforded the same protections as other state citizens.

Because Petitioner kept asking his trial counsel to speak-up and object to all of count-less miss-representation of facts and and staged evidence being introduced by the prosecutor. Petitioner was ordered to be gaged by his own counsel. Although it wasn't a physical gag it still had the same negative efect on the jury as the bailift was ordered to stand behide Petitioner during the entire trial and whenever Petitioner tried to ask counsel a question the bailift leaned over and reminded him he would be removed if he simply tried to even wisper a question to counsel. The bailift standing behind him along with leg restraints obviouly left a bad imprssion in the jurys mind.

The use of restraints on a prisoner in a courtroom is generally not permitted except to prevent escape, to protect other individuals in the courtroom, and or to maintain order. See Woodwards v. Caldwell, 430 F.2d 978, 982 (CA6, 1970); People v. Baskin, 145 Mich. App. 526 (1985); superseded by statute on other grds, People v. O'Quinn, 185 Mich. App. 40 (1985). The typical concern is the impact on the Fifth Amendment right to a fair trial. However, such restraint may also impermissibly interfere with the Sixth Amendment right to counsel either at trial or at sentencing. See People v. Krueger, 466 Mich. 50 (2002); Illinois v. Allen, 397 U.S. 337 (1970); Szuchon v. Lehman, 273 F.3d 299 (CA3, 2001); Spivey v. Head, 207 F.3d 1263 (CA11, 2000); U.S. v. Durham, 287 F.3d 1297 (CA11, 2002).

Shackling interferes with the defendant's ability to participate in his defense, and it is an affront to the dignity and decorum of the judicial proceedings. The appearance in shackles implies that court authorities consider

the defendant a danger to the community, a relevant factor in the jury's decision.   The   trial judge failed to make any findings on the need for restraints, such as the   risk of escape or a threat to courtroom security.   Defendant was not required to show prejudice.   Deck v. Missouri, 544 U.S. 622; (2005).

Shackling petitioner in view of his jury was not harmless error.   There was no finding that the evidence was overwhelming, or that the shackling was necessary, or that the jury would not infer from the shackles that petitioner was particularly   dangerous or violent.   The Michigan Court of Appeals' failure to recognize the likelihood of substantially injurious effects from the unnecessary shackling was an unreasonable application of the harmless error standard. Ruimveld v. Birkett, 404 F.3d 1006 (CA6, 2005).

The   trial   court   abused   its discretion by requiring defendant to wear leg shackles in the courtroom.   There was no evidence to suggest that defendant was a flight risk, that he was   likely to attempt to escape, or   that   shackles   were required   for   the   purpose   of   maintaining   order in the courtroom.   However, defendant failed to show prejudice.   The defense table was skirted with paper, preventing the jury from seeing the shackles.   People v. Payne, 285 Mich. App. 181 (2009).

The Michigan Supreme Court, in lieu of granting leave to appeal, reversed the Court of Appeals order denying defendant's motion to remand for an evidentiary hearing on the issue of whether his shackling during trial prejudiced his defense.   The Court also reversed the Court of Appeals decision that defendant did not preserve the Constitutional issue.  Counsel's request that defendant's hands be unshackled to avoid prejudice preserved the Due Process issue.   On remand, if the jury saw the shackles, the burden will be the prosecutor to prove harmless error beyond a reasonable doubt. People v. Davenport, 488 Mich. 1054 (-2001).

NOTE:   Appellant was never made to wear any type of restraint at any of the numerous hearings before trial nor was Appellant required to wear restraints at sentencing or any other post trial appearances.   Only in front of the jury did the Court order Appellant be required to wear leg shackles.

Defendant contends that on or about 2013 he was paraded in front of potential juror's wearing leg shackles and instead of having defendant placed in the trial court and sitting down before jurors were brought in.  Defendant was forced to hobble in to the court with awkward full leg shackles, along with a police escort in front of his waiting jury.  This was highly prejudicial to defendants' presumed innocence.  Nevertheless it was mandated without any just cause.

Where the cumulative effects of errors operate to deprive Defendant of Due Process of Law. Even if no single error in isolation does so. A new trial is required US. Const. VI.XIV: Const. 1963 Art I see 17. Herbert v Louisiana, 272 US. 312; 47 SCt 103; 71 LEd 2d 270 (1926).

(A): Defense counsel neglected defendant's state and federal constitutional rights ubder the 14th Amend. Due Process clause and the 6th Amend. compulsory process in his failure to present a defense.

Un-beknowst to the defendant until which time the prosecution had called all of the states witnesses and subsequently rested was it disclosed by the trial court that defense counsel failed to procure only two witnesses of the approximately twenty seven witnesses to the fact that Defendant's trial had been moved back three months on the court docket and that the subpoenas had *not* been up dated. See trial transcripts vol III pg 67. Mr. Thomas being questioned by the trial court as to whether or not Defendant's witness had been served for trial:

Mr Thomas: We didn't re-serve anybody, your Honor

Court    : Mr Thomas were you able to escertain wether or not those witnesses had been Subpoenaed?

Mr Thomas: Your Honor, I could find no returns of service in our files.

The only witnesses that were produced at trial were 2

gentleman that had been call mates of the confidential informent
/ co- defendant Kaven Parson's. These witnesses were brought into
court in handcuffs and prison orange jumpsuits. The only reason they
were even called to testify was for the simple fact they were housed
in the county jail and the prosecutor knew where to find them.

The property where the alleged teabottle/ _meth_ was found was found
on a separet piece of property that had been recently added to
the property deed which defendant's sister held and defendant's
sister could have testified not only to this fact but to the fact
that this property had a separet driveway and there was a major
problem problem with illegal dumping where the alleged bottle was
found.

Sera Spencer the house keeper if subpoenaed would have testified
that in fact she mixedup the miricle grow that was found under the
kitchen sink in a one gallon glass jar. The state without any test-
ing _was_ allowed to proclaim this plant food was coleman fuel used for
cooking meth.

Dr Esidean would have testified that Defendant was on soboxin
by his orders. This would have explained away the fact the Defendant
was found by police in his own shower naked and seemed lathargic.
(the total  opposit of a meth reaction ) Defendant just returned
home from working all day and took his suboxin as prescribed
before getting in his shower, yet un aposed the state was allowed
to make this inocent action look as if it were criminal and odd.

Dr Maffozze if called to testify would have explained away
the real reason Defendant had the driano and other drian cleaners
Having five bathrooms in his house one of them was stoppedup for
over two years and the doctor bought the drain cleaner for the
Defendant to use to unclog his drain and had been woorking at the

doctor's house all day.

Had the Defendant's own lab expert been subpoenaed he could have affectively argued that they way the state addmitted to adding hydrocloric acid to the suspect sollution and then cooked it down on a hot plate was not only un-exceptible but he would have comfimed that the state them salves made math and at the most the Defendant only had a few componates at best.

The lab expert also could have negated the state lab tech.'s testimoney that if the tea bottle tested positive for meth then it had to of contained lithium.in it. this is absolutly untrue the socalled meth could have been made with a plathora of other componates such as red phospharous or gun bluing or something else

Defendan't lab tech. could have argued successfully that Meth has a camical fingerprint of 115 and the suspected solution the state had tested at 117. Defendant now sits in prison for something that didn't even test possitive as meth. The state lab tech. addmitted that the sullution of 117 that he first/claimed to be meth was in fact cloriform used to calibrat the machine. Yet Defandant was still convicted for the 117 solution.

Defendant subpeonaeed his cell phone company in order to prove that he was home during the time he was said to be 50 miles away in Davison MI buying sudo pills. Again counsal and prosecutor forgot this witness also.

(B): Failure to seek an adjournment during trial when a highly potential exculpatory witness failed to appear after being subpoenaed Hodgson v Warren, 622 F3d 591(6thcir).

Doctor Maffozz had a death in his family and had to go to Paccastand to burry his mother. The Doctor showed up 3 times prior to testify yet the court postponed for the day everytime

just before the very busy doctor was set to testify. and when
he had no choice but to leave the country for his mother's
death. counsel simply failed to ask for e continuance.

In US. V. Barke 553 Fd lexis 2449 Defendant's were entitled
to a new trial because the district courts refusal to grant a
continuance so the government could secure the attendece of
witnesses was not harmless and violated defendant's sixth amendment
right to a fair trial.

It is obvious that Defense counsl gave up the fight for
the Defendant's rights before trial even began with his neglect
in precuring Defendant's witnesses negated by the fact counsel did
nothing to rectify his mistake in the way of a continuance or
any other form of relief for his client. Taylor v Illinois, 484 us
400 (1988).

Consquently as a direct result of counsel's negligence to
secure Defendant's Endorsed witnesses. Defendant was forced into
an unfair possiton by the trial court to make do with and proceed
with the only two witnesses they could seem to locate at the last
minute.jailhouse witnesses. To furthar exesperbate this situation
, counsel then fails to request a continuance until which time
counsel would have ample opportunity to secure the remainder of
Defendant's rebutal witnesses.

The right of an accused to have compulsory
process for obtaining witnesses in his favor stands
on no lesser footing than the other 6th amend. rights
that are applicable to the states. The right to offer
the testimony of witnesses, and to compel their attendannc
if necessary,is in plain terms; the right to present a de-
defense, and the right to present the defendant's verson

of the facts as well as the perspective of the jury

so it may decide where the truth lies. Just as an accused

has the right to confront the prosecution's witnesses

against him.

(C):Trial Counsel was defective when he failed to renew his request

for a research assistant.

Two weeks before defendant;s trial comenced trial counsel

motioned the court for more time to prepare for trial. This request

was subsequently denied by the sitting Judge Amy Giarhart with an

sugestion that counsel put in a request for an investigator tohelp

with the case load. Mianly it involved interviewing the Defenses

endorsed witness (which was never accomplished) Defense counsel

did make a formal request as was advised by the standing judge but

on the day the motion went before the court and was heard there

was a stand in judge who denied the ruling on the grounds it should

be brought up infront of the presiding judge. Defense counsel simply

proceeded on to trial unprepared without ever  even speaking to

any of the witnesses to see whether or not they did or did not have

anyprobative testimoney, Yet counsel went on to promise the

the jury they would in fact testify, but in his obvious confussion

counsel faildto re-new his subpoenaes after the trial was moved

back ~~XXXXXXX~~. leaving the jury holding on to counsel's false

promises with nothing more to aleaviate or explain this false

promise to the jury

The sixth amendment right to effective assistance of counsel

, throght the Due Process clause, requires the appointment of an

investigator or expences for an investigator for indigent defendant's

. Howaver provision of investigative assistance is not an automatic

right,

-27-

and defense counsel must demonstriate the need for assistance bas
ed on the facts and circumstances of the case. Counsel should advise
the court of specific aspects of the case he wishes to pursue and
explain why counsel himself is un-able to investigate the matter
.Mason V Arizona, 504 F2d 1345 (9thcir. 1974).

Counsel did exactly this and was advised to request it in
writing by the court. yet never did so. How can this be sound triel
stratigy. See June 17th hearing pg 28

(D): Defense Counsel was ineffective in his failure to object
to the state's lab results.

The lab results from the Bridgport lab were comprimized and
the lab technisions in charge of the report could not explain
who, where, or why there were time stamps on the alleged report from a _Came_
the Genasee County prosecutor's office. The lab tech. could not
garenty that the samples or the reports had not been comprimissed
and therefore they should not have been allowed in as evidense agaist
Defendant.

_different prosecutori office_ →

The distric court did not error in denying admission of a
defense exhibit because defendant failed to lay an adequate
foudation. Even if the idntification of the handwriting was
sufficient, the witness did not know what the numbers on the
document signified. Defendant failed to establish the reliability
of the exhibit. U.S. v Brika, 416 F3d 514 (ca6,2005).

(E): Under Mich R evid. 702, and 403 the State lab tech
testimony was incomplete and should not been allowed into evidense
It had no satistical data evidence accompaning it  as is required
by law under the Daubert test. Daubert v Merrell Dow Pharmasudicals
Inc. 509 U.S. 597; 113 SCt 2786.

(F)  Counsel was ineffective when although he admitted he had no
knowledge of math or how to defend a case against it and the trial
court granted the defence an expert lab assistant. Counsel neglected
to call this witness to trial or during trial. U.S v Fessel 53 F2d
1275; People v Ackley 2014 Mich App Lexis 774 .

During jury diliberations the jury submitted a question to
the court as follows:

Court: So the record should reflect that we have a few juror
questions. The court has in camera reviewed those with
the attorneys, and there are no objections of the court
asking the questions. So I haven't done this in a while

Court: This is a new process for us, so we'll work together
through the --so  when you answered the bottle from
Step 1, was tested, you were refering to the item removed
from the toilet that had the sludge in it correct?

Prosecutors witness: Correct

Court: Is that correct?

Prosecutor's Witness: Yes

Court: And did it test positive?

Prosecutor's Witness: I believe it did, yes.

Court: And the last question is if it did test positive
wasn't lithium necessary to make it test positive,
even if it wasn't observed in the bottle?

Prosecutor's witness: The answer is yes. .

Court: All right, Thank you. May this witness be excused Ms Coaster?

Ms Coaster: Your honor, can we ask a clarification question as to
his answer to the question?

This answer that went unchallenged by defense counsel is
absolutly ridiculas and untrue because there are several other
componates that could have been used in the cooking process other
than using lithium. Such as red phaferious,,or amodieum nitrate
or even Gun-bluing. The only reason the state chose to claim
lithium, was the fact that they allegedly found lithium batteries
in the co-defendant's coat pocket

-29-

The state did absolutely no testing for lithium, as it was their reasoning that lithium was to toxic to test for it.

Note: a simple unharmful test could have been preformed by the state to determin whether or not lithium was present instead of giving an un-informed guess when the Defendant's life balanced on the answer. Had Defense counsel even botherd to call his own lab expert on the phone and asked this very question. The answer would have came out much differently. For there is no dought that his answer would of been of at the very least one of common sense. and that is( No without testing you can't infer any specific cemical or componate is present in any mixter.)

The sixth Amendment right to a jury trial and Due Process clause of the fourteenth Amend. require that all the elements of the offence be submitted to the jury and proven beyond a reasonable doubt. United States V Gaudin. 515 U.S. 506 (1995). This Means, "[a[t the very least' that the evidence brought against a defendant and concidered by the jury be presented at trial where the defendnat can confront that evidence to the fullest extent possible". Doan v brigano, 237 F.3d 722(6thCir.2001), over ruled on other grounds by wigens v smith, 539 U.S. 510 (2003) granting habaas relief for improper jury experimentation, citing Turner v Louisiana. 379 U.S. 466, 472-73 (1965).

**Note;  It had already been determined that the mixure in the bottle was not meth it had a chemical finger print of 117 and was determined to be cloriform.   Therefore no  litium would have shown up on the graft as lithium . and  their own spectrogram showed no lithium.**

(G) Counsel was ineffective in his failure to strike for cause
    juror Bishop. During Voir dire pg 34 line 6-9 juror Bishop
    was presented by the prosecution with the question of whether
    or not he could be impartial:


PROSECUTOR: Q: okay well based on your experiences are you going
               to be able to sit in a meth case essentially and
               beimpartial about it?

MR. BISHOP  Q: Probally not.

    To further confirm juror Bishop's biased mind set pg 40-43

Mr Bishop states that as part of his job as a union Rep. he was

forced to represent people with drug problems to whom he was against

and didn't like doing. On line1pg 41 defense attorney Thomas questions

juror Bishop:

Mr Thomas:  Q: Do you think you could be fair with charges involving

               the use of drugs or the manufacture of drugs or are

               youjust against that entirely?

            Q: You think you could be fair in deciding this case?

MR Bishop   A: It'd be tough. I don't know.

    See pg 48-49: Because Mr Bishop's grandson is now a police officer

Mr Bishop believes in his grandson's honesty and integrady. He

goes on to proclaim that all police officer's tell the truth.

Mr Thomas   Q: I want to ask you folkssome questions about police

officers in general. There's going to be alot of police officers

testifying in this case. do you think--does anybody think--and can

you raise your hand-- that police officer's are entitled to more

of the benefits of the doubt that they're always telling the

truth than any other witness? Anybody think that?

Mr Bishop   A:My grandson just graduated out of the police academy

in Victora, Texas and I spent alot of time with him and, you know

his class is more or less dependant on him telling the truth
and--be--be upfront with ya so.

MR Thomas: So you tend to think that police officer's are more
inclinded to tell the truth, more than other people?

Mr Bishop: A: Yes sir.

Pages 59 1 2-18 The Trial Court's Jury voir dire

The Court: Q: Ladies and gentlemen that are in the jury box right
now, you don't have to tell me why but I just want to make sure that
you feel as though you'd be able to sit as afair and impartial
juror for any reason. any of these questions anything that comes
to mind, is there anybody that doesn't feel that you could sit on
this particular jury as a fair and impartial juror?

          Juror Bishop: (Raises hand)

          Juror Schook: (Raises hand)

The Court: Q: Mr Bishop?

          juror bishop: Yeah

The Court: Q: Related to your representation of individuals?

juror Bishop: A: Yes when it's got something to do with drugs I--
you know I've seen too much of it.

No further voir dire was conducted by the court or Mr Thomas as
is mandated by law to repute or satisfy the obvious bias remarks
of juror Bishop.

Trial Counsel had a sworn duty to protect his clients 6th and
14th Amendment right to have an impartial jury, and 14th amend.
right for failure to challenge this obvious biased juror for
cause the 6tn circuit has ruled that failure to challenge a
biased juror can not be strategic decission. Miller v Webb 385
F3d666,(6th Cir2004) also see Johnson v armotroot 961 F2d 748.

(H):Failure to attempt to bar seating of an obviously biased juror

constituted inefective assistance of counsel to a fundamental degree

Accordingly the court affirmed the trial court's grant of habeas

relief on the condition the state retry defendant with-in 180 days

Counsel's failure to challenge for cause only to proceed on

using another one of Defendan't crucial prempitorial strikes
cartainly prejudiced Defendant's attempt to seat an ubbiased jury
pannel had been seated. There were still four biased jurors left

Mr Beachy : Knows the cops and coudn't believe anything defendan's

Co -defendant said. He said he would believe the cops

over anyone else he also socialized with the cops on

the case. Judge refused to release for cause and

defendant was then forced to use another prempt. pg79.

Ms Coxe   : Is against drugs and defendants case hinges on personal

use. But addimately denied making any math.

She said said she could set aside her personal oppinons.

She worked for the same prosecutor's office years

before when Defendant was Convicted for drunk driving

and other charges.

Now Ms coxes is sitting in judgement of the same Defendant that
                    again
she once helped to prosecute. If the state is allowed to use that
       driving
same1convition to enhance Defendant's sentence. Then how can the

state argue that there has been enogh time lapse that Ms Coxes

loyalties no longer lie with the very office she once worked. If

this is the case quick for cho the Defendant's older charges

shouldn't be used against him because of the significany time lapse.

MR. Rayl  :After admitting to being freeds with the head prosecutor

and friends with the police on the case, along with

having inside knowledge of the case from those very
police

MR. Shantz:    Thinks the term math lab means some one in their own home making
and selling math

Thinks Cops are held to a higher standard of truth. Cops have
to be better at telling the truth. Pg 92-94


(I): The Court : After Defense ran out of prempatory challenges the judge introduced
the jury without asking if deffendant was satisfied. pg 110.

Where a trial court has rejected a defendant's for-cause chal-
lenges to jurors depoite their serious doubts about the ability
to be impartial. hebeas relief may be appropriate. Wolfe v Brigeno,
232 F3d 499(6thCir.200)(defendant's rights to a fair and impartial
jury was violated by the denial of defendant's for cause challenge
of four biased jurors who expressed doubts as to whether they
could be fair and impartial; two of them had close relationships
with the victum's parents, one had heard news accounts of the crime
and expressed doubt as whether she could decide the case on the
evidence, and the fourth doubted he would require the prosecution
to prove it's case beyond a reasonable doubt.)
OOo
Juror Popham: pg 99-101 : A biased Police officer  who was denied
for cause and Defendant was forced to use a peremptory strike
Mr popham was an officer from the same police station as the
arresting officers and was friends with the lead detectives yet
the Defendant's challenge for cause was denied and defendant was
once again forced to use another crucial perampatory strike.

Reversal was required by the trial court's refusal to diss-
miss for cause a juror who was a police officer in a comunity near
the scene of the offense,who was a friend and co-worker of the

police witnesses, who had testified in numerous cases tried by
the prosecuting attorney in this case, and who himself had in-
vestigated several similar offenses in his ten years as a police
officer. Although employment as a police officer does not, without
more, require disqualification of a prospective juror, the close-
ness of the juror's relationship with the prosecutor and police
witness's in a case where the credibility of the testifying
officers was especially crucial, was particularly troubling.
Paople v Robert 162 Mich App. 60 (1987). This trial took place
in a very small comunity. there is one judge and the police all
know each other. this officer admitted to hanging out at the
prosecutors house and watching football games with him and having
cook outs with the officers in charge of the case.


(J):     It was a jurisdictional defect to charge the Defendant
with a second subsequent drug conviction using a 90 day misdemaanor
to enhance a falony drug charge.

     How can it even be logical that a 90 day misdormeanor could
double a felony drug conviction. A 10 to 20 year sentence can
now be doubled because of a past 90 day maximum marijuena convivtion.
To a 20 to 40 year sentence  This is a ridiculas abuse of the pro-
secutor's charging powers and against the ladgislature's intent

     MCL§ 769.10  sec 10. (1) If a person has been convicted
of a felony or an attempt to commit a felony, whether the conviction
occured in this state would have been for a felony or attempt to
commit a felony in this state, the person shall be punished upon]
conviction of the subsequent falony and sentencing under section
13 of this chapter as follows:

-35-

Misdemeanors can only be used to enhance other misdemeanor charges and in some cases maltible misdemeanor convictions for the same offence can be added up to count as a felony which inturn could by law ito enhance a subsquent felony, but in no way dose MCL 333-7413 autorize the use of a 90 day misdemeanor to be used to enhance a major felony drug conviction of opperating a meth lab. This enhancement charged against the Defendant is volitile to the legall principle of law and totally void of any common sense. Therefore in can not be allowed to stand. This proceedure is not allowed in the Federal courts making it un-constitutional for any State to abridge such a law.

(K):    No evidence to support charge of maintaining a meth lab

Unlike the challenges to the great weight of the evidence, which must be raised initially in the trial court, claims involving the suficiency of the evidence may be raised on appeal without first moving for a new trial in the circuit court. People v Patterson, 428 Mich. 502 (1987).

The trial court admits during sentencing that Defendant's case boardered on the lower end of the less serious of a so-called meth lab and that it was only a one time incedent or lack of judgement. Additionally she admits that this was a last minute thing that the Defendant was talked into. The charge of maintaining a meth lab means exactly that. (Maintaining) In Defendant's case all of the testimony by police and alleged witnesses sugest that this was infact a one time/single incident and nothing more. Even the prosecutor's own theory is that co-defendant Keven Parson's brought the meth over to Defendant's Home and introduced it to him, then showing him how to make it

by the state's own account of that days events the Defendant

in no way could be said to of been maintaining a meth lab.

therefore the Maintaining charge is void of the esential eliment

needed for a convition under thet charge and must be vacated.

    The state produced no prior sarvalence, no privious arrest,

and not even as much as a prior accusation to suport this main-

taining theory. See:

    The crime of maintaining a drug vehicle was reversed, end

and his case was remanded for reconcideration, baceuse while

MCL§333.7405(1)(d) precluded a conviction for an isolated incident.

without other evidence of continuity, the statue did not require

the prosecution to show that the Defendant's actions occured"cont-

inuously for an appreciable period." People v thompson, 477 Mich,

146, 730 NW@2 d 708,2007 Mich. Lexis 953 (Mich.2007).


    ( K):Counsel was ineffective in his failure to argue Defendant

had an affirmative defence of persobal use to negate the manufacture,

maintaining, and possesion of meth charges.

    There is absolutly no indication or even a accusation by the

states that defendant's alleged actions were for anything other

than simply for personal use. The state coceeds it was a one time

thing for defendant's own personal use as well as the trail

judge's acknowledgment at Defendant's sentencing hearing that

Defendant had a propenciety to drink and do drugs if presented

with such an oppartunity to do so, and that this was all about

the Defendant getting high and nothing more that for his own

parsonal use.

    "Manufacture" means the production, preparation, compounding,

-37-

conversion, or processing of a controled substance, directly or indirectly by extractionfrom substances of natural origin, or indeoendently by means of chemicial synthesis, or by a combination of ectraction and chemical synthesis. It includes the packaging or repackaging of the substance or labeling or relabeling of it's container, exceptthat it does not include either of the folowing : (a) The preparation or compounding of a controlled substance by an individual for his own personal use.

   (L ) Counsel was ineffective in his failure to object to both the trial court and the prosecution's blatant interferance and subsequent intimidation of exculpitery defense witnesses.

   In and during a personal interview at the jackson, Mi prison co-defendant Keven Parson told Defense counsel that he infect brought the meth to Defendant's home. He further stated that Defendant wanted nothing to do with the drugs nor did he know or participate in the manufactura of the alleged drugs. Parson 's also claimed that it nwas tammy Harbin and Jasica Yax that went to Davison and bought the sudo pills needed to make more meth and that Defendant stayed in his work shop working on the next days project without any knowledge of this or the fact Harbin and Yax's were cooking more meth. Parson also indicated that it was he alone who placed the suspect bottle in the toilet and that Defendant knew nothing about it. He also went on to admit that he indeed told the police about the whereabouts of said bottle and that is why during their raid on Defendant's home the police knew exactly where to look and find said bottle.

   Parson's agreed to testify at Defendant's trial, but that testimony was forted by the direct interferance by trial counsel the very instant Mr Parson's took the stand. Without any legal

right to do so and contrary to state and federal Law. The judge

and the prosecutor infront of the witness discussed and then

determined that if the co-defendant Parson's was to testify,to

bring the drugs and hiding the bottle as they had intisepated

that Parson's would inded be once again charged with the charges

the prosecutor had agreed to drop in lue of his plea bargin

Parson's was now serving prison time for. In front of Parson's the

prosecutor also informed Mr Parson's that he would charge him with

more charges on top of those that were dropped in excnange for his

plea if Parson's were at all to take the stand in defense of the

Defendant.See  People v Hooper, 157 Mich App 669; 403 N.W.2d 605 1987

    See People v Butler, 30 Mich App 561,562; Any interferances

intimadation, or prevention concerning the right to have a witness

heard leads to injustice. A prosecutor's duty is as much to refrain

from proper methods calculated to produce a wrongfull conviction

as it is to use every legitimate means to bring about just one

He must see that the Defendant has a fair trial and protect the

public who are as concerned with protecting the innocent as well

as convicting the guilty. see: Webb v Texas, 409 U.S. 55,34 L.Ed

2d330, 93 SCt. 351(1972).

ARGUEMENT

DEFENDANT WAS DENIED DUE PROCESS PROTECTIONS WHERE TRIAL COUNSEL FAILED TO CHALLENGE THE DESTRUCTION OF EXCULPITORY EVIDENCE IN THE TRUST OF THE STATE.

<u>Standard of Review:</u>

For ineffective assistance of counsel claims, the "de novo," standard of review applies to the existing record. See e.g. <u>People v. Barclay.</u> 208 Mich App 670. 672: 528 NW2d 842 (1995).

<u>Discussion:</u>

A defendant seeking a new trial on the grounds that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions. a convicted defendant must satisfy the two-part test articulated by the united states Supreme Court in <u>Strickland v. Washington,</u> 466 U.S. 668. 702-703: 521 NW2d 797 (1994). "First." the defendant must show that counsel's performance was deficient. "Second. the defendant must show that the deficient performance prejudiced the defense." Id at 687. To demonstrate prejudice. the defendant must show the existence of a reasonable probability that. but for counsel's error. the result of the proceeding would have been different. Id at 694. "A reasonable probability is a probability ...

sufficient to undermine confidence in the outcome." Id. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v. Hoag.* 460 Mich 1. 6: 594 NW2d 57 (1999).

More particularly, the failure of defense counsel to move for suppression of inadmissible evidence may amount to ineffective assistance of counsel, where defense counsel's failure affected the outcome of the trial. See *Northrop v. Trippett.* 265 F 3d 372 (CA 6. 2001). cert den 535 US 955: 122 SCt 1358: 152 L Ed 2d 354 (2000) (Fourth Amendment violation).

Turning to the underlying issue, defendant kept a jar of miracle grow under his kitchen sink for the sole purpose of watering the abundance of house plants throughout his home.  Subject to a search warrant served on defendant on or about 1-8-2014. said jar of miracle grow was seized suspect of being a potential component that might be used in the production of meth.  Per the record the state then transported the jar to the Bridgeport crime lab. Id. Vol II p. 55. where in the safety of the state crime lab. a controlled environment with all the necessary testing equipment at their disposal. The state deemed this jar of plant food unwarranted as evidence and subsequently destroyed it.  Id. Vol I p. 294.    At trial the state proceeded to falsely...

.. claim this item to be Coleman Fuel.  Defendant contends that the introduction of evidence against him was a violation of Michigan 403 and Federal 70a Rules of evidence and contrary to the United States Supreme Court ruling in Brady v. Maryland, 373 U.S. 83.

Defendant further contends that the state should not be allowed to destory exculpating evidence in there care, only to be permitted later to claim it to be something it was not.  This item of evidence, should have been properly tested and identified in a scientific manor.  And not left to a jury to decide its make up by looking at a picture or going off the word of a biased police officer's opinion of what he needs it to be in order to prove his case.

Defendant asserts that the state was allowed to replace the original exculpitory evidence, which was destroyed at their own hands with their own can of coleman fuel they purchased from a local store placing the can on the floor in full view of the jury.  The state claimed the jar under the defendant's sink was Coleman fuel but no evidence was introduced to substantiate this claim.

This Court should note, that the state destroyed what was plant food and substituted it with Coleman fuel, the very component the state needed to complete their theory that the defendant had all of the components needed to manufacture meth.

This violation of defendant's rights cannot be said to be harmless error when it goes to the very core of defendants basic right to a fair trial also the..

... right to put on a defense. Halbert v. Michigan, 545 u.s. 605.  The miracle grow and other exculpitory evidence was destroyed - thus prohibiting the defendants ability to prove his innocense. Under Brody, the state not allowed to infer guilt by the absense of something destroyed by their own hands. For the forgoing reasons, Defendant is entitled to a new trial.

The Michigan C.O.A. claim although Petitioner argues how the evidence was tested he don't explain how it was wrong. That's simply un-true . For one the state lab expert tells how he first tested it and it came back negative . He says he then add hydrocloric acid to the mix and cooked it down on a hot plate.

He had previously told the jury how one must add hydroc;oric acid to a cook and cook it down in-order to make meth. So in all reality the lab tec was telling how he tried to make the substance into meth.   Then the state distroied the substance so it couldn't be tested by Petitioner. Even then  after Petitioner's own son-in-law whokwas a chemistry professor at MSU looked at the graft he discowered the mixure the state claimed to be meth was infact cloriform. Please read the trial transcripts they had no positive test to prove meth their own results were debunked they had cloriform they tried to pass off as meth. This case should have ended there in a mistrial instaed  it goes on and the Michigan court of appeals is still saying they found meth . simply UN_TRUE.

IN CONCLUSION

The Court Of Apeals (COA) states that even if Defendant was

to prevail on any of his issues that it would be inconsequential

due to the overwhelming evidence against the Defendant. Defendant

points out the obvious, "what evidence?" There are only inadmiss-

able hearsay statements volitila against the confrontation clause

The state used as so-called witnesses against him. They claim

to of obtained a confession from the Defendant himself, yet they

produced no signed statement, no miranda waver, and no vidio

recording as was required by law. They produced no tangibal

proof of the pruchaces of the pseudoephedrine thay claim Defendant

bought. Not even a time reciept or as much as a picture of the

alledged pills. The so-called Damming items the state claimed to

of found in the bathroom under the Defendant test negative for

hydrocloric acid, math or anything else associated with the

production of meth. The two vials the state claimed to have tested

positive for meth was later proven to be cloriform the state lab

tech. addmitted to leaving in the spectrogram before he inadvertantly

tested the suspect solution. The alledged sample test out to have

a chemical finger print of 117 which the lab tech. addmitted was

the cloriform. Meth carries a finger print of 115 therefore the

state proved nothing. This just proves the states own lab test

was flawed from the start when they failed to clean there spectrogram

before testing anything with it. So this case actually comes down

to the word of a few biased police officers that have a interest

in the Defendant's conviction putting a parolely back behind

bars and getting reconition for having the first meth lab bust
in the county.

In this day and age especially when a man is facing several years behind bars and possibally life. The police ought not be allowed to merely suggest they found drugs, took statements, and even got a confession. They should be made to show proofs beyond a reasonable doubt. A case should be decided on the evidence or in the case at bar the lack of evidence not showmanship. This case was clearly nothing more than smoke and mirrors. The police used thier persona of supreme greatness preconcieved by a jury who was spoon feed nothing more than acussasions and theorys, and this un-witing jury goobaled it right up. Defendant didn't have a trial he faced an inquisision/a modern day witch hunt. "how dare this man introduce meth into our small quiant town. Lets burn him at the stake". That's exactly what they did. Nothing Defendent faced resemballed a modern day civilized trial. Defendant wasn't even guilty but eveything in this case eventually ends up getting twisted. Such as the claim Defendant was tested positive for meth. Defendants test came back negativefor any meth, but the trial prosecutor got away with slipping in the lie that his test was possitive whitout any objection from defence counsel. All of the co-defendants were taken to the county hospital for rutine checkup's there was no mention of any burn by the Defendant. Nor was any burn found, or even reported by the county hospital, but yet the prosecutions lies just keep on comming and they call me the criminal. Defendant humbally ask this honorable court to remand this case back down to the trial court for a new and feir trial or in the alturnative grant an evidentuary hearing on defendant's miranda claims, his Ginther claims,evidentiary claims.Or any other relief this court see fit to issue. Thank you. sinserly:

/

David H Johnson

7, 14, 20.    David Johnson

-45-

David Johnson 595438
Central MI Correctional Facility
~~St. Louis~~, 320 N. Hubbard
St. Louis, MI 48880



7/15/20

RECEIVED
JUL 29 2020
CLERK'S OFFICE
DETROIT

UNITED States District Court
Office of the Clerk
Theodore-Levin United States Court house
231 West Lafayette BLVD room 58
Detroit, MI 48226