UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID JOHNSON,

      Petitioner,                        Case No. 20-cv-11461
                                              Hon. Matthew F. Leitman

v.

JOHN CHRISTIANSEN,

      Respondent.

_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner David Johnson is an inmate in the custody of the Michigan Department of Corrections.  In 2013, a jury in the Tuscola County Circuit Court convicted Johnson of operating a methamphetamine laboratory – second offense in violation of Mich. Comp. Laws § 333.7401c(2)(f), manufacture of methamphetamine – second offense in violation of Mich. Comp. Laws § 333.7401(2)(b)(i), and possession of methamphetamine – second offense in violation of Mich. Comp. Laws § 333.7403(2)(b)(i).  The state trial court then sentenced Johnson to a controlling term of 10 to 20 years in prison. After a remand by the Michigan Supreme Court under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the state trial court re-sentenced Johnson to the same term of imprisonment.

1

On June 5, 2020, Johnson filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Western District of Michigan. (*See* Pet., ECF No. 1.)  The petition was subsequently transferred to this Court. (*See* Dkt.)  In the petition, Johnson raises the following seven claims: (1) his right to a speedy trial was violated, (2) he was denied the effective assistance of trial counsel, (3) the state trial court violated his right to confrontation when he was denied the opportunity to cross-examine a confidential informant, (4) the prosecutor and police failed to preserve physical evidence, (5) the state trial court scored the sentencing guidelines based on facts not proven beyond a reasonable doubt, (6) the state trial court's imposition of the 10-to-20 year sentence was unreasonable, and (7) he was entitled to be resentenced before a different judge.

The Court has carefully considered Johnson's claims and, for the reasons explained below, it **DENIES** them.  The Court will also deny Johnson a certificate of appealability. However, it will grant Johnson leave to appeal *in forma pauperis*.

**I**

The Michigan Court of Appeals summarized the evidence presented at Johnson's jury trial as follows:

> The Michigan State Police (MSP) received what appeared to be a credible tip from a confidential informant regarding methamphetamine at defendant's home. After arriving at defendant's residence, officers approached and knocked on the door. Defendant's girlfriend, Tammy Harbin,

2

answered the door. A MSP trooper asked Harbin if defendant was home, and Harbin gave a non-verbal cue with her head pointing toward the closed bathroom door. Officers entered the house and opened the bathroom door to find defendant shirtless and "hunched over, very rigid in his body," making jerky movements and shivering. They observed what they believed to be components of methamphetamine production in the bathroom and noticed a strong chemical smell in the air.

As a MSP trooper was assisting defendant, Harbin was asked by another officer if methamphetamine was being manufactured in the house. She indicated that "it's in the bedroom." Defendant later stated that methamphetamine was being made in the house and offered to take an MSP sergeant to the location. Defendant took the officer to a bedroom, and when the door was opened, the officer observed a pedestal fan that was running and the overwhelming smell of chemical fumes. Defendant pointed to a cardboard box and said, "[I]t's in there." The box contained lye, plastic tubing, and coffee filters, all of which are used in the production of methamphetamine. Additional components of methamphetamine production were observed on the dresser. After a security check of the house, the decision was made to evacuate the house and to contact the methamphetamine team.

A MSP trooper performed an outdoor perimeter check of defendant's residence and observed in the snow a heavily traveled footpath between the house and outbuildings. The footpath led to a small wooded area 40 to 50 yards from the house. At the end of the path the trooper observed a toilet in the woods with the lid partially closed. Inside the toilet was a plastic container that the trooper believed contained hazardous material associated with a methamphetamine lab.

3

During the course of the investigation, lithium batteries, rock salt, a glass jar containing a bluish liquid, a torn-open cold pack, the bottle with the tubing stuck in the top, more tubing of that type, a bottle of drain opener, tin foil, coffee filters, table salt, and pseudoephedrine pills were found. All of these materials are involved in the manufacture of methamphetamine. Based on his experience and training, one MSP trooper suspected the bluish liquid was Coleman fuel, which is a solvent used in the production of methamphetamine. A MSP trooper qualified as an expert in illegal manufacture of methamphetamine explained that many of the items taken from the house were destroyed pursuant to Drug Enforcement Administration and state policy because they are considered potentially hazardous, but four samples were taken and tested. Two contained methamphetamine and two were inconclusive. Additionally, field tests were conducted on the bluish liquid. The tests indicated that the liquid was a solvent that the officer believed to be Coleman fuel.

One of the MSP troopers took defendant and Harbin to the police station and interviewed them. After waiving his *Miranda* rights, defendant stated that he, Harbin, and the confidential informant were cooking methamphetamine at his residence. He explained that the informant brought the needed materials and cooked it. Defendant indicated that the informant taught defendant and Harbin how to cook it and how to smoke it. After smoking the methamphetamine, defendant, Harbin, and Jessica Yax purchased more materials and cooked more methamphetamine at defendant's residence. During a subsequent interview with his parole officer on January 11, 2013, defendant again stated that the informant had introduced him to methamphetamine and that he, Harbin, and the informant manufactured the drug and that he continued to use it.

*People v. Johnson*, 2015 WL 1122283, at ** 1-2 (Mich. Ct. App. Mar. 12, 2015).

4

Following his convictions, Johnson filed a claim of appeal in the Michigan Court of Appeals. His appointed appellate counsel filed a brief on appeal that raised five claims:

> I. Defendant was denied his constitutional right to a speedy trial and was denied the right to be tried within 180 days when, through no fault of defendant, trial did not commence.
>
> II. Defendant was denied his constitutional right to effective assistance of counsel when trial counsel's cumulative errors denied defendant a fair trial.
>
> III. Defendant's conviction was based on the testimonial hearsay statements of unavailable declarants and since there was no opportunity to cross examine the declarants, the trial court violated defendant's Sixth Amendment right to confront witnesses by admitting the statements.
>
> IV. Defendant was denied the right to due process and fundamental fairness to present a defense when the police failed to preserve key evidence.
>
> V. Defendant is entitled to resentencing because the statutory sentencing guidelines were misscored as to the offense variables, which affected the statutory sentencing guideline range.

The Michigan Court of Appeals affirmed Johnson's convictions in an unpublished opinion. *See id.* Johnson then filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court reversed Johnson's sentence under *Lockridge*, but it otherwise denied leave to appeal. *See People v. Johnson*, 873 N.W.2d 565, 565-66 (Mich. 2016) (Table).

The state trial court thereafter held re-sentencing proceedings. (*See* ECF Nos. 16-15, 16-16.)  The court elected to conduct a full new sentencing hearing, rescored the guidelines, noted the guidelines were advisory, and re-sentenced Johnson to the same term of imprisonment that it originally imposed (10 to 20 years). (*See* ECF No. 16-16, PageID.1425-1426.)

Johnson appealed again to the Michigan Court of Appeals, raising two claims:

> I. The trial court imposed an unreasonable sentence of 120 to 240 months imprisonment for operating/maintaining a laboratory involving methamphetamine and delivery/ manufacture of methamphetamine.
>
> II. Appellant is entitled to be resentenced before a different judge where the trial court again scored offense variable 14 and again placed him into an inaccurately high range for the minimum sentence notwithstanding a prior ruling of the Michigan Supreme Court in this case and established law by unconstitutionally using judicial fact-finding to score the variable and thereby increase the guideline range.

The Michigan Court of Appeals affirmed Johnson's sentence in an unpublished opinion. *See People v. Johnson*, 2018 WL 296108 (Mich. Ct. App. Jan. 4, 2018). Johnson filed for leave to appeal in the Michigan Supreme Court, but that court denied his application in a standard order. *See People v. Johnson*, 933 N.W.2d 293 (Mich. 2019) (Table).

6

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

In Johnson's first claim for habeas relief, he asserts that his right to a speedy trial was violated. The Michigan Court of Appeals reviewed that claim on direct appeal and denied it on the merits:

> Defendant first argues that he was denied his right to a speedy trial. To preserve a speedy trial issue for appeal, a defendant must make a formal demand for a speedy trial on the record. *People v. Cain*, 238 Mich. App. 95, 111 (1999). Defendant was arrested on January 8, 2013, and demanded a speedy trial on January 30, 2013. However, defendant stipulated to an adjournment of the trial date from April 30, 2013 to July 23, 2013, to allow him to obtain an independent laboratory analysis of the four

7

samples. The stipulation and order specifically states that "[s]aid adjournment is attributable to the defendant and he is waiving any speedy trial objection he may nor may not be entitled to." "[A] defendant cannot claim error based upon actions that his lawyer deemed proper at trial or as to which he otherwise acquiesced." *People v. Rodriguez*, 251 Mich. App. 10, 32 (2002). Additionally, we note that trial did not commence on July 23, 2013, because defense counsel was admitted to the hospital the night before. As a result, the trial did not actually commence until two weeks later on August 6, 2013. Thus, the delays at issue are attributable to defendant, which vitiates against a finding that he was denied any right to a speedy trial. *See People v. Waclawski*, 286 Mich. App. 634, 666-667 (2009)(stating that the reason for the delay is one of the factors to consider when deciding whether a defendant was denied the right to a speedy trial).

*Johnson*, 2015 WL 1122283, at *2.

Johnson has not shown that this decision was either contrary to, or an unreasonable application of, clearly established federal law.  The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. *See* U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the Supreme Court has directed courts to consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The first factor, "[t]he length of the delay[,] is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*  And while "the length of

8

delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of [each] case" *id.* at 530-31, "lower courts have generally found postaccusation delay 'presumptively prejudicial'" when the delay approaches "one year." *Dogget v. United States*, 505 U.S. 647, 652 n.1 (1992).

Johnson has not shown that the Michigan Court of Appeals' denial of this claim was unreasonable. The delay between Johnson's arraignment and his trial was less than seven months. He was arraigned on January 23, 2013, and trial commenced on August 6, 2013. It was therefore not unreasonable for the state courts to conclude that that delay was not presumptively prejudicial. Moreover, at least part of the reason for that delay was attributable to the defense. Johnson's trial counsel stipulated to an adjournment from May until July of 2013 so that he could seek independent testing of what the police lab determined was methamphetamine. (*See* ECF No. 16-3, PageID.396-399.) And while Johnson now insists that the prosecution intentionally misled his trial counsel into stipulating to that delay when the prosecution supposedly knew that "there was absolutely no evidence left to test" (Johnson Reply Br., ECF No. 17, PageID.2044), Johnson has not presented any evidence to support that argument. Finally, a second short adjournment was granted as a result of Johnson's counsel's illness. Under these circumstances, Johnson has not shown that the Michigan Court of Appeals unreasonably denied his speedy trial claim. Johnson is therefore not entitled to federal habeas relief on that claim.

9

**B**

Johnson next claims that he was denied the effective assistance of trial counsel.  To prevail on this claim, Johnson must show that the state court's adjudication of his ineffective assistance claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* sets forth a two-prong analysis for assessing ineffective-assistance-of-counsel claims: 1) 'the defendant must show that counsel's performance was deficient,' and 2) 'the defendant must show that the deficient performance prejudiced the defense.' *Strickland*, 466 U.S. at 687." *Id*. at 592 (internal citations and punctuation omitted). To meet the first *Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89 (internal quotation marks omitted). The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

10

proceeding would have been different." *Strickland*, 466 U.S. at 694. On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.

In the petition, Johnson claims that his trial counsel: (1) failed to effectively challenge unfavorable prospective jurors during *voir dire* and to move for a change of venue, (2) failed to develop impeachment material with respect to witness Jessica Yax, (3) failed to object to the admission of certain photographs, (4) failed to object to the destruction of materials seized from his house, (5) failed to call thirty-seven witnesses named on the defense witness list, and (6) failed to investigate whether the police cars present at the raid of his home had activated their dashboard cameras. The Court will examine each of these claims of ineffective assistance separately below.[1]

---

[1] The Court will discuss Johnson's ineffective assistance claim arising out of his trial counsel's failure to object to the destruction of evidence in Section (III)(D) below. The Court examines Johnson's remaining ineffective assistance claims in this section of its order.

11

**1**

The Court begins with Johnson's claims that his trial counsel rendered ineffective assistance (1) during the jury selection process and (2) when counsel failed to renew his motion for a change in venue.  The Michigan Court of Appeals considered these claims on direct review and rejected them:

> Defendant argues that defense counsel was ineffective in his handling of jury selection. Counsel's decisions relating to the selection of jurors is generally a matter of trial strategy. *People v. Johnson,* 245 Mich.App 243, 259; 631 NW2d 1 (2001). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Rockey,* 237 Mich.App 74, 76–77; 601 NW2d 887 (1999). In order to succeed on a claim of ineffective assistance of counsel based on the failure to challenge or remove a juror, a defendant must show that the outcome of the trial would likely have been different had the juror not participated in deliberations. See *Hughes v. United States,* 258 F3d 453, 458 (CA 6, 2001).
>
> Defendant first raises a concern about a juror and a prospective juror who said that they would not be inclined to believe Jessica Yax, who defendant planned to call as a witness. However, Yax never testified, so there is no basis to find any prejudice. Defendant also questions defense counsel's handling of a juror who indicated that her "life experiences" with family members who had drug and alcohol abuse issues would impact her ability to be fair and impartial. We conclude that counsel's failure to use a preemptory challenge or to challenge this juror for cause could have been a matter of trial strategy. The juror's indication of a possible bias was not explored, so it is not clear if her "life experiences," which included close family

12

members battling drug and alcohol addiction, made her potentially more sympathetic toward drug abusers or less sympathetic. But given counsel's superior ability to assess the juror, we are "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *People v. Unger*, 278 Mich. App. 210, 258 (2008). Further, after the clerk administered the oath, which included an affirmance that the jury would "render your verdict only on the evidence introduced an in accordance with the instructions of the Court," the jury responded, "I do." Finally, in light of the overwhelming evidence of defendant's guilt, including his confession, defendant has failed to show that the outcome of the trial would likely have been different had this juror not participated in deliberations. *Hughes*, 258 F3d at 458.

Another potential juror also indicated that he could not be fair because of his experiences with people affected by drugs. He did not serve, however. And a juror who said that she was "strictly against drugs" and that she used to work for the prosecuting attorney as a secretary said that neither of those things could affect her ability to be fair or impartial. Defendant offers nothing to call into doubt this affirmation.

Defendant also cites defense counsel's handling of a juror who stated that it is the job of a police officer "to tell the truth." Defendant claims that this statement constitutes a disqualifying prejudice. However, the juror had already indicated that he could be fair and impartial and that he was not inclined to believe a police officer more than anyone else. We do not question counsel's handling of the juror under these circumstances.

Citing to *People v. Jendrzejewski*, 455 Mich. 495 (1997), defendant also argues that defense counsel was ineffective by failing to renew his motion for change of venue due to the high percentage of the venire who admitted to a disqualifying prejudice. *Jendrzejewski* held, in part, that

13

> "[c]ommunity prejudice amounting to actual bias has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, more infrequently, community bias has been implied from a high percentage of the venire who admitted to a disqualifying prejudice." *Id.* at 500-501. The present case does not involve pretrial publicity and its [e]ffect on the jury venire. Further, defendant has failed to demonstrate that a high percentage of the venire admitted to a disqualifying prejudice, asserting without any analysis that "after exhausting all of the preemptory challenges, there were 4 members of the jury who had a disqualifying prejudice." "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v. Hoag*, 460 Mich. 1, 6 (1999).

*Johnson*, 2015 WL 1122283, at ** 3-4.

Johnson has not shown that this ruling was either contrary to, or an unreasonable application of, clearly established federal law. This simply is not a case where Johnson's trial counsel was inactive during jury selection. Indeed, Johnson's counsel actively participated during *voir dire*, questioned prospective jurors to ascertain whether they were desirable from a defense perspective, and exercised multiple peremptory challenges. (*See generally*, ECF No. 16-10.) Counsel also sought to remove several jurors for cause. (*See, e.g.*, *id.*, PageID.560-562.) And one juror who stated during *voir dire* that he could not be fair in a case involving an alleged methamphetamine lab was in fact removed for cause. (*See id.*, PageID.563-564.) Under these circumstances, Johnson has not shown that the Michigan Court

14

of Appeals unreasonably declined to question his counsel's strategic decisions during *voir dire*.   Nor has Johnson established that the state appellate court unreasonably concluded that, given the "overwhelming evidence of [] guilt," Johnson could not show the required prejudice from his counsel's performance during jury selection.

Finally, Johnson has not shown that the state courts unreasonably rejected his claim that his trial counsel was ineffective when counsel failed to renew a motion to change venue.   Johnson has not established that there was the kind of extensive pre-trial publicity or wide-spread bias that could have supported a renewed motion to change venue.   Thus, Johnson has not persuaded the Court that had his trial counsel renewed the venue motion, there was a reasonable probability that the state trial court would have granted it.   Accordingly, the Michigan Court of Appeals did not unreasonably deny this claim.

For all of these reasons, Johnson is not entitled to federal habeas relief on these components of his ineffective assistance claim.

## 2

Johnson next asserts that his trial counsel failed to investigate why potential witness Jessica Yax was not charged with any offenses. The Michigan Court of Appeals considered this claim on the merits and rejected it as follows:

15

> Defendant argues that defense counsel failed to inquire from the police why Jessica Yax was not charged with a crime. He speculates that there might have been an undisclosed deal with Yax not to charge her in exchange for her testimony in violation of *Giglio v. United States*, 405 U.S. 150 (1972). However, because Yax did not testify, a *Giglio* violation could not have occurred. Whether and why Yax was charged or not charged are not relevant to any fact in defendant's case.

*Johnson*, 2015 WL 1122283, at *4.

Johnson has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law. Johnson did not sufficiently explain to the state courts, and he does he sufficiently explain here, why investigating the reason police did not charge Yax would have benefitted his defense. Nor has he shown that had his trial counsel investigated the police's decision not to charge Yax, it likely would have led to a different result at trial. For all of these reasons, Johnson is not entitled to federal habeas relief on this claim.

### 3

Johnson next contends that his trial counsel was ineffective when counsel failed to object to the admission of certain photographs taken at his house. Johnson claims that the photographs were taken after the police rearranged the items depicted and that the photographs therefore did not accurately reflect how police initially found the items. The Michigan Court of Appeals considered this claim on direct review and rejected it:

16

> Defendant argues that defense counsel should have objected to the admission of certain photographs because the photographs did not reflect the scene as the police found it. However, the jury was made aware that the photographs did not reflect the scene as it was found. The decision not to object to the photographs under these circumstances falls within the range of reasonable professional conduct. And defendant has failed to show that, but for the admission of the photographs, the result of the proceeding would have been different in light of the overwhelming evidence of defendant's guilt. *Armstrong*, 490 Mich. at 289-290.

*Johnson*, 2015 WL 1122283, at *5.

Johnson has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law. Johnson has not established that had his trial counsel objected to the admission of those photographs, the state trial court would have sustained such an objection.  As the state appellate court accurately recounted, the photographs were not offered at trial as purporting to show the items as they were found in the house. Sergeant Boyer testified that he observed the components used for making methamphetamine during the search of Johnson's house in several locations. (*See* ECF No. 16-10, PageID.715-721.) Boyer further testified that when he asked Johnson about it, Johnson admitted that he used methamphetamine and that it was in the house. (*See id.*)  Johnson then pointed to a box that contained methamphetamine and its components. (*See id.*) Boyer testified that he thereafter collected all the items that he thought were involved in the

17

manufacture of the drugs and took the photographs. (*See id.*, PageID.732-733, 736, 742.) Likewise, Trooper Kemerer acknowledged during his testimony that the items were moved around the house prior to being photographed. (*See* ECF No. 16-11, PageID.874.)  Accordingly, Johnson has not shown that either the police witnesses or the prosecutor attempted to falsely characterize the photographs as depicting the items as they were found.  Moreover, during closing arguments, Johnson's trial counsel argued to the jury that the staging of items found in the house for the photographs provided a reason to doubt the credibility of the police witnesses. (*See* ECF No. 16-13, PageID.1277-1279, 1283-1284.)   Under these circumstances, Johnson has failed to establish that the Michigan Court of Appeals unreasonably rejected his ineffective assistance claim arising out of the admission of the photographs.  Johnson is therefore not entitled to federal habeas relief on this claim.

## 4

Johnson next maintains that his trial counsel was ineffective when counsel (1) failed to call thirty-seven people named on the defense witness list and (2) failed to present documentary evidence from the Department of Human Services that, according to Johnson, could have established that he did not have exclusive control over his home because he shared the home with his girlfriend, Tammy Harbin.  The Michigan Court of Appeals considered these claims on direct review and rejected them:

18

Defendant argues that defense counsel failed to secure the presence of 37 witnesses for trial. He contends that "many of the witnesses would have explained why Defendant had the so-called methamphetamine components." Defendant only identifies one witness that he claims should have been called. The record reveals that defense counsel advised the trial court on the morning of August 9 that the mother of this potential witness had passed away the night before and that he was on his way out of the country and, therefore, unavailable to testify. Defendant has not attached an affidavit from the witness indicating how he would have testified. We will not engage in any speculation on how the proceeding would have been different under these circumstances.

Defendant also argues that defense counsel failed to arrange for a court order requiring the Department of Human Services to provide documentation establishing that Harbin was residing at defendant's home where the evidence was found and that defendant was therefore "not in control of the whole household." The record reveals, however, that defense counsel stated on the record the following:

> DHS did present themselves in reference to the order this morning and Mr. Abbey went through their file and talked with them and they presented their entire file. In fact, they brought us both the file on Miss Harbin that they have and Mr. Johnson, and there was no documentation in there signed by Miss Harbin reflecting anything that was relevant to the case.... So we have excused them from appearing.

Thus, defendant's argument is without merit.

*Johnson*, 2015 WL 1122283, at ** 5–6.

19

Johnson has not shown that this ruling was contrary to, or an unreasonable application of, clearly established federal law.  While he complained to the state courts that his trial counsel failed to call thirty-seven witnesses, Johnson only presented an argument to the state courts with respect to one of those witnesses: Dr. Mahfooz. (*See* Johnson St. App. Ct. Br., ECF No. 16-17. PageID.1564.)  Johnson said that Dr. Mahfooz would have testified that Johnson was working at his (Dr. Mahfooz') house on the day in question and used the alleged methamphetamine supplies as part of that work. (*See id.*)  However, Johnson did not provide the state courts with an affidavit or other statement from Dr. Mahfooz to support the those claims.   Johnson has therefore failed to show that the state appellate court unreasonably rejected the claim. *See*, *e.g.*, *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petition did not "introduce[] affidavits or any other evidence establishing what they would have said.").[2]

---

[2] In his second appeal challenging his re-sentencing, Johnson again attempted to seek relief based on his counsel's failure to call witnesses at trial. (*See* Johnson St. App. Ct. Br., ECF No. 16-19, PageID.1833.)  In his brief to the Michigan Court of Appeals in that appeal, Johnson identified several additional witnesses that that he said could have testified in his defense, and he identified the subject matter of those witnesses' testimony. (*See id.*)  The Michigan Court of Appeals refused to consider Johnson's argument regarding these witnesses because (1) Johnson's claim regarding these witnesses was addressed in his first appeal (discussed in text above) and (2) the scope of Johnson's second appeal was limited to issues arising from his resentencing. *See People v. Johnson*, 2018 WL 296108, at *2 (Mich. Ct. App. Jan. 4, 2018)

Johnson has likewise failed to show that the state appellate court unreasonably rejected his ineffective assistance claim related to the Department of Human Services records. As that court noted, it appears that Johnson's trial counsel spoke with representatives from the Department of Human Services, reviewed their records, and determined that the records did not establish that Harbin had any kind of control over Johnson's home. Johnson has not established that under those circumstances, the Michigan Court of Appeals unreasonably rejected his ineffective assistance claim.

For all of these reasons, Johnson is not entitled to federal habeas relief on these components of his ineffective assistance claim.

---

("Defendant also filed a Standard 4 brief in which he raises additional issues involving the ineffective assistance of counsel, right of confrontation, and a challenge to the amended "Re–Sentence" judgment of sentence. The law is clear that an appeal by right following a remand is limited to issues arising from the remand. *People v. Jones*, 394 Mich. 434, 435–436; 231 N.W.2d 649 (1975). Because the scope of the current appeal is limited to matters that arose at resentencing, we will only address the challenge to the entry of the amended "Re–Sentence" judgment of sentence because it occurred from the trial court's resentencing. The remaining issues raised in the Standard 4 brief are outside the scope of this appeal."). Because Johnson failed to identify the additional witnesses during his initial direct appeal – the appeal in which the Michigan Court of Appeals addressed his ineffective assistance claim related to uncalled witnesses – he may not seek relief here based upon counsel's failure to call the additional witnesses. In any event, he has failed to present affidavits or other evidence attesting to what these additional witnesses would say, so he has not shown an entitlement to relief based upon his attorney's failure to call these witnesses. *See Tinsley, supra.*

21

**5**

In Johnson's final claim of ineffective assistance of counsel, he says that his trial counsel should have investigated whether there was any police dashcam footage of the raid of his home.   Johnson contends that if such dashboard camera video existed, it might have revealed a Fourth Amendment violation.  The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant speculates that if defense counsel had investigated whether the police cars had dash cameras he might have been able to obtain evidence to determine whether the officers entered his residence in violation of the Fourth Amendment. Defendant offers no evidence or argument or any allegations in support of this assertion. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton v. Keller,* 256 Mich.App 336, 339–340; 662 NW2d 854 (2003).

*Johnson*, 2015 WL 1122283, at * 6.

As in the state court of appeals, Johnson has not presented any evidence to this Court in support his contentions about the dashcam videos.  He has therefore not shown that the state court's rejection of this claim was an unreasonable application of *Strickland.*

## C

In Johnson's third claim for habeas relief, he asserts that his right to confront witnesses was violated when he was unable to cross-examine a confidential informant regarding statements that the informant made to police. The confidential informant elected to exercise his Fifth Amendment right against self-incrimination and declined to testify at Johnson's trial. After noting that the issue was unpreserved, the Michigan Court of Appeals rejected the claim on the merits[3]:

> Defendant argues that he was deprived of his right of confrontation because the informant's statements to the police implicated him in the crimes, but the informant was allowed to assert his right against self-incrimination. [….]
>
> A defendant has the right to be confronted with the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20; *Crawford v. Washington,* 541 U.S. 36, 42; 124 S Ct 1354; 158 L.Ed.2d 177 (2004). The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 68. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. *United States v. Cromer,* 389 F 3d 662, 675 (CA 6, 2004). However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. *McPherson,* 263 Mich.App. at 133, citing *Crawford*, 541 U.S. at 59 n 9. Thus, a statement offered to show the effect of the out-of-court statement on the hearer

---

[3] Such an "alternative merits ruling" is subject to "the deferential requirements of AEDPA." *Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008).

does not violate the Confrontation Clause. *People v. Lee,* 391 Mich. 618, 642–643; 218 NW2d 655 (1974). Specifically, a statement offered to show why police officers acted as they did is not hearsay. *People v. Jackson,* 113 Mich.App 620, 624; 318 NW2d 495 (1982).

Defendant has not identified in his analysis of this issue the statements that he asserts were offered in violation of his right to confront the confidential informant. An appellant may not merely assert an issue and leave it to this Court to search for a factual basis to sustain or reject his position. *People v. Petri,* 279 Mich.App 407, 413; 760 NW2d 882 (2008). Thus, the issue is abandoned. But even if we were to assume that two sentences he underlined in his statement of facts in his brief on appeal are intended to represent the allegedly improperly admitted statements, no relief is warranted.

The first underlined statement reads, "[Trooper Leddy] said contact was made with [the informant], who provided information implicating Defendant and Tammy Harbin." A review of the cited pages reveals that Trooper Leddy testified regarding a credible tip from the informant regarding defendant and his girlfriend, Tammy. The tip also involved a location. Based on the information received, officers proceeded to defendant's residence. The testimony was not offered to establish the truth of the informant's tip. Rather, it was offered to establish and explain why the police investigated defendant's home and how defendant came to be arrested. Because the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation. *McPherson*, 263 Mich. App. at 133.

The second underlined sentence reads, "[the confidential informant] accused others of cooking methamphetamine, including Defendant and Tammy Harbin." However, it

24

> was defense counsel who elicited this information through
> his cross-examination of Trooper Leddy. Furthermore,
> this information, like the other information, was being
> offered to show how the police investigation progressed;
> it was not offered to prove the truth of the matter asserted,
> which means that defendant's right to confrontation was
> not implicated. *Id*. Therefore, defendant has failed to
> establish plain error affecting his substantial rights, and his
> assertion has no merit.

*Johnson*, 2015 WL 1122283, at ** 6-7.

Johnson has not shown that this decision was contrary to, or an unreasonable

application of, clearly established federal law.  Under clearly established Supreme

Court law, the Confrontation Clause "does not bar the use of testimonial statements

for purposes other than establishing the truth of the matter asserted." *Crawford v.

Washington*, 541 U.S. 36, 59 n.9 (2004) (Scalia, J.) (citation omitted). Accordingly,

evidence that merely provides background or is offered only to explain how certain

events occurred or why law enforcement officers took certain actions is not offered

for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause

violation. *See United States v. Warman*, 578 F.3d 320, 346 (6th Cir. 2009).

Here, Johnson has not shown that the state court unreasonably determined that

the challenged testimony by the officers regarding the tips that led them to Johnson's

house was provided to give context to and explain the reason for the raid – and was

not offered to prove the truth of the matters asserted. Thus, he has not shown that his

confrontation rights were implicated by the challenged testimony. Johnson is

therefore not entitled to federal habeas relief on this claim.

## D

In Johnson's fourth claim for habeas relief, he argues that the police failed to

preserve physical evidence seized at his property that the police later claimed was

used in the manufacture of methamphetamine. Johnson insists that because the

evidence was not preserved, he was deprived of the ability to test the evidence and

show that it was not used to manufacture drugs. Johnson further claims that his trial

counsel was ineffective when counsel failed to object to the destruction of that

evidence. The Michigan Court of Appeals considered these claims on direct review

and rejected them:

> Defendant argues that he was deprived of the ability to
> present important evidence because the police failed to
> preserve crucial evidence seized from his residence that
> would have given the jury substantial reason to doubt his
> guilt. Photographs of the evidence taken before its
> destruction were admitted into evidence. Defendant did
> not preserve this issue by objecting or moving to dismiss
> in the trial court. Thus, this issue is reviewed for plain error
> affecting substantial rights. *Carines*, 460 Mich. at 763.
>
> Defendants have a due process right to access the evidence
> against them. *People v. Anstey*, 476 Mich. 436, 460
> (2006). Thus, the prosecution's deliberate or inadvertent
> suppression of material evidence that is favorable to the
> accused violates due process. *People v. Chenault*, 495
> Mich. 142, 149-150 (2014)(citing *Strickler v. Greene*, 527
> U.S. 263, 281-282 (1999). Likewise, the government's

26

failure to preserve potentially exculpatory evidence may violate a defendant's due process rights. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). However, to prevail on a failure-to-preserve claim, defendant must show that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith in failing to preserve it. *People v. Heft*, 299 Mich. App. 69, 79 (2012).

In this case, the destroyed evidence included various items used in the production of methamphetamine—specifically Energizer brand lithium batteries, a one-gallon glass jar with Coleman fuel, a glass plate, Equate brand cold packs, a Brisk tea bottle, salt containers, drain opener, coffee, filters, tubing, aluminum foil, and razor blades. An industrial hygienist testified that all of the items were hazardous with the exception of sodium hydrochloride. A Michigan State Police Sergeant testified that the items were destroyed pursuant to Drug Enforcement Administration and state policy regarding the handling of hazardous materials. He testified that the chemicals used during the production of the drug are explosive, that they stick to items, and that all of the items taken away that night and destroyed were determined to be hazardous. Therefore, defendant has not established any plain error because he has not shown that the police destroyed the evidence in bad faith nor has defendant shown that the evidence was potentially exculpatory.

[….]

Defendant additionally argues that defense counsel failed to object to evidence being destroyed before he had the opportunity to test it. He refers only to the substance that the police identified as "Coleman fuel" and asserts that the substance was actually Miracle–Gro. It appears that he is arguing that independent testing of the solution would have revealed that the substance was in fact Miracle–Gro and, therefore, the destruction of the evidence denied him the right to present a defense. However, defense counsel

27

> did argue that the prosecution failed to prove that the
> liquid was Coleman fuel. Moreover, defendant has failed
> to show, even if he had shown that the substance was
> Miracle–Gro, that the result of the proceeding would have
> been different in light of the other evidence of items used
> in the manufacture of methamphetamine as well as
> defendant's confession. *Armstrong*, 490 Mich. at 289-290.

*Johnson*, 2015 WL 1122283, at ** 5, 7-8.

Johnson has not shown that these rulings were contrary to, or an unreasonable

application of clearly established federal law.  Johnson primarily challenges the

destruction of a substance that he claims would have been revealed to be Miracle

Grow  and  not  Coleman  fuel  (an  ingredient  used  in  the  creation  of

methamphetamine). But because it is not clear whether testing would have proved

exculpatory or not, all that the Court can say is that the destroyed evidence was

*potentially* useful to the defense.  Under clearly established Supreme Court law, the

failure of police to preserve evidence that is only potentially useful for a defendant

violates a defendant's due process rights only if the defendant can show bad faith on

the part of police. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).  Thus,

when the state fails to preserve evidentiary material "'of which no more can be said

than that it could have been subjected to tests, the results of which might have

exonerated the defendant,' a defendant must show: (1) that the government acted in

bad faith in failing to preserve the evidence; (2) that the exculpatory value of the

evidence was apparent before its destruction; and (3) that the nature of the evidence

28

was such that the defendant would be unable to obtain comparable evidence by other means." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) (quoting *Youngblood*, 488 U.S. at 57).

In this case, the Michigan Court of Appeals did not unreasonably determine that Johnson had failed to show that the evidence was destroyed in bad faith. Trooper Leddy testified that many items that were taken from Johnson's home were subsequently destroyed because they were considered hazardous. (*See* ECF No. 16-10, PageID.699-700.) And Trooper Kemerer testified that all the materials except for four samples were transported by the "meth team" to be destroyed pursuant to preexisting protocols. (*Id.,* PageID.797-799; ECF No. 16-11, PageID.850-853.) Finally, Sergeant Arndt testified that after the samples were taken, the rest of the materials were packaged and later destroyed pursuant to Drug Enforcement Administration policy because they were deemed to be hazardous. (*See id.*, PageID.897-904.)  Furthermore, as asserted by Respondent, Johnson has not shown that the one item in question—what was identified by police as Coleman fuel—was a substantial factor in determining Johnson's guilt. (*See* ECF No. 15, PageID.144.) For all of these reasons, Johnson is not entitled to federal habeas relief on this claim.

Likewise, for many of the same reasons, Johnson has not shown that the Michigan Court of Appeals unreasonably rejected his ineffective assistance claim arising out of his trial counsel's failure to object to the destruction of the evidence.

Moreover, counsel argued to the jury that because the materials were destroyed, the prosecutor could not demonstrate that the materials were, in fact, hazardous or that they consisted of illegal materials as the police claimed. (*See, e.g.,* ECF No. 16-10, PageID.699; ECF No. 16-11, PageID.934-936.)  The record therefore reflects that far from ignoring the destruction of materials, Johnson's trial counsel attempted to use that destruction as a way of challenging the credibility of the police investigation and witnesses.  Johnson has not established that it was unreasonable for the Michigan Court of Appeals to conclude that those strategic choices did not amount of ineffective assistance.

**E**

Johnson next asserts that the state trial court impermissibly scored the state sentencing guidelines based on facts not proven beyond a reasonable doubt at trial. Specifically, Johnson says that the jury never made a determination in its verdict that justified scoring the offense variable indicating that Johnson was the leader in a multi-person offense.  This claim fails because Johnson was re-sentenced based on the non-mandatory version of the sentencing guidelines.

Johnson's argument arises from the United States Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013). In *Alleyne*, the Supreme Court held that to satisfy the right to a jury trial in the Sixth Amendment, any fact that increases a mandatory minimum sentence is an "element" of the offense that must be

30

submitted to the jury and proven beyond a reasonable doubt. *Alleyne*, 570 U.S. at 111-12. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines violated the Sixth Amendment because the guidelines "require[d] judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506. The court's remedy was to make the guidelines advisory. *See id*. at 520-21.

In this case, even if Johnson's initial sentencing violated the Sixth Amendment, Johnson was subsequently re-sentenced under the advisory sentencing guidelines. Indeed, at re-sentencing, the state trial court expressly acknowledged that, because "this [was] a resentencing pursuant to *Lockridge* [the court] consider[ed] th[e guideline] ranges to be advisory." (ECF No. 16-16, PageID.1394.) A sentence premised on an advisory version of previously mandatory sentencing guidelines does not implicate the Sixth Amendment and thus does not violate *Alleyne*. *See United States v. Booker*, 543 U.S. 220, 232 (2005) ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a

statutory range."). Johnson is therefore not entitled to federal habeas relief on this claim.

**F**

In Johnson's sixth claim for habeas relief, he asserts that his 10-to-20-year sentence (on re-sentencing) was unreasonable. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant first argues that the trial court, at resentencing, imposed unreasonable sentences of 10 to 20 years for the operating or maintaining a methamphetamine lab and delivery or manufacture of methamphetamine convictions. We disagree.

> The interpretation or application of sentencing guidelines statutes presents a question of law that is reviewed de novo. *People v. Francisco*, 474 Mich. 82, 85; 711 N.W.2d 44 (2006). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v. Steanhouse*, 500 Mich. 453, 471; 902 N.W.2d 327 (2017).

> "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich. at 392. In *Steanhouse*, the Michigan Supreme Court "affirm[ed] the Court of Appeals' holding in *People v. Steanhouse*, 313 Mich. App. 1; 880 N.W.2d 297 (2015), that the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v. Milbourn*, 435 Mich. 630, 636; 461 N.W.2d 1 (1990)." *Steanhouse*, 500 Mich. at 459–460.

However, in *People v. Schrauben*, 314 Mich. App. 181, 196 n 1; 886 N.W.2d 173 (2016), this Court noted that "*Lockridge* did not alter or diminish MCL 769.34(10)," which provides in relevant part:

> (10) If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.

The sentencing guidelines range for operating or maintaining a laboratory involving methamphetamine and delivery or manufacture of methamphetamine was 78 to 130 months each. The trial court sentenced defendant to a minimum 120 months' imprisonment for each conviction, well within the range. Because defendant's minimum sentences fell within the guidelines' range, the reasonableness review by Lockridge is not applicable. Further, this Court previously held that there was no error in scoring the guidelines, and the trial court did not rely on inaccurate information in determining his sentence. While defendant argues that this Court should conclude that the first sentence of MCL 769.34(10) is no longer valid because the sentencing guidelines are now advisory, this assertion is directly contrary to the holding in *Schrauben* that the Lockridge decision did not alter or diminish MCL 769.34(10). Accordingly, this Court must affirm defendant's sentence in accordance with MCL 769.34(10). *Schrauben*, 314 Mich. App. at 196.

*People v. Johnson*, 2018 WL 296108, at ** 1-2 (Mich. Ct. App. Jan. 4, 2018).

Johnson is not entitled to relief on his claim that the sentence imposed on re-sentencing was unreasonable. First, to the extent that Johnson claims that the

sentence violated federal law, he is not entitled to relief because he has not shown that the state court's ruling was contrary to, or an unreasonable application of, any decision of the United States Supreme Court applying the Eighth Amendment.  In the alternative, to the extent that Johnson seeks relief under state law – and it appears that is the law under which this claim arises – the claim fails because violations of state law are not cognizable in federal habeas proceedings. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (explaining that "a federal court may issue the writ [of habeas corpus] to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States'") (quoting § 2254(a)).

## G

In Johnson's final claim for federal habeas relief, he asserts that he is entitled to be re-sentenced before a different judge because the state trial court twice imposed an erroneous sentence. Because Johnson is not entitled to sentencing relief for the reasons stated above, this claim is denied as moot.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless the Court issues a certificate of appealability under 28 U.S.C. § 2253. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Johnson a certificate of appealability because jurists of reason could not debate the Court's conclusion that Johnson failed to demonstrate an entitlement to habeas relief on any of his claims.

Although the Court declines to issue Johnson a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Johnson's claims, an appeal could be taken in good faith. Therefore, Johnson may proceed *in forma pauperis* on appeal.

**V**

Accordingly, for all the reasons stated above, **IT IS HEREBY ORDERED** that (1) Johnson's petition for a writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE**, (2) Johnson is **DENIED** a certificate of appealability, and (3) Johnson is **GRANTED** permission to appeal *in forma pauperis.*

                    s/Matthew F. Leitman
                    MATTHEW F. LEITMAN
                    UNITED STATES DISTRICT JUDGE

Dated:  June 7, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 7, 2022, by electronic means and/or ordinary mail.

                    s/Holly A. Ryan
                    Case Manager
                    (313) 234-5126